**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------------X

MOLLY GREEN, on behalf of herself and all others
similarly situated,

                                        Plaintiff,

                    -against-

HUMANA AT HOME, INC, d/b/a SENIORBRIDGE
FAMILY COMPANIES, INC.

                                        Defendant.

-----------------------------------------------------------------------------X

Civ. No.:  16-cv-07586-AJN

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANT'S CROSS-
MOTION FOR SUMMARY JUDGMENT**

NOEL P. TRIPP, ESQ.
DAVID R. GOLDER, ESQ.
JACKSON LEWIS P.C.
58 South Service Road, Suite 250
Melville, New York 11747
(631) 247-0404

90 State House Square, 8th Fl.
Hartford, Connecticut  06103
(860) 522-0404

*ATTORNEYS FOR DEFENDANT*

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ............................................................................................... 1

II.    RELEVANT FACTUAL HISTORY .................................................................. 3

    A.    DOL's 2013 Proposed Amended Regulation And Humana's Good Faith Efforts To Comply With The Anticipated Regulation Scheduled To Take Effect On January 1, 2015 ......................................................................................................... 4

    B.    Humana's Good-Faith Response To The District Court's Vacatur Of The Home Care Regulation ....................................................................................... 5

    C.    Humana's Good-Faith Response To The Circuit Court's Reversal Of The Lower Court ..................................................................................................... 6

III.   LEGAL ARGUMENT ....................................................................................... 7

    A.    Element 1: Humana Relied On The Then-Effective 1975 Regulation, As Well As DOL's Administrative Practices And Enforcement Policies ................................. 9

    B.    Element 2: Humana Acted In Conformity With DOL's 1975 Regulation, Administrative Practices, And Enforcement Policies ............................................ 14

    C.    Element 3: Humana Relied On DOL's 1975 Regulation, Administrative Practices, And Enforcement Policies In Good Faith ............................................... 15

IV.    BECAUSE PLAINTIFF'S FLSA CLAIM SHOULD BE DISMISSED, THIS COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS ................................................................................................ 20

V.     IN THE ALTERNATIVE, PLAINTIFF'S REQUEST FOR LIQUIDATED DAMAGES SHOULD BE DENIED BECAUSE HUMANA ACTED WITH GOOD FAITH ............ 21

VI.    TO THE EXTENT THE COURT CHOOSES TO CONSIDER PLAINTIFF'S STATE LAW CLAIMS, THEY MUST BE DISMISSED ................................................. 22

    A.    Plaintiff's Application for "Derivative" Wage Theft Prevention Act Damages Must Be Rejected, And Summary Judgment Granted To Humana .................................. 22

    B.    Plaintiff's Spread-Of-Hours Claim Must Be Dismissed ....................................... 25

VII.   CONCLUSION .................................................................................................. 25

i

## **TABLE OF AUTHORITIES**

*Alvarez v. IBP, Inc.*,
    339 F.3d 894 (9th Cir. 2003) ..................................................................................19

*Ayala v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*,
    No. 14-cv-5269, 2016 U.S. Dist. LEXIS 127425 (E.D.N.Y. Sept. 16, 2016) ........................23

*Birch v. Pioneer Credit Recovery, Inc.*,
    06 Civ. 6497 (MAT), 2007 U.S. Dist. LEXIS 41834 (W.D.N.Y. June 8, 2007)...............20, 21

*Bouchard v. Reg'l Governing Bd. of Region V Mental Retardation Servs.*,
    939 F.2d 1323 (8th Cir. 1991) ..................................................................................8

*Cabrera v. Schafer*,
    222 F. Supp. 3d 250 (E.D.N.Y. 2016) ......................................................................24

*Darr v. Mut. Life Ins. Co.*
    169 F.2d 262 (2nd Cir. 1948)..................................................................9, 10, 11

*EEOC v. Home Ins. Co.*,
    672 F.2d 252 (2nd Cir. 1982)....................................................................9, 17

*Encino Motors, LLC v. Navarro*,
    136 S.Ct. 2117, 195 L.Ed.2d 382 (2016) (*concurrence*) ..........................................8

*Encino Motors, LLC v. Navarro*,
    138 S.Ct. 1134, 200 L.Ed.2d 433 (2018) (*dissent*) ............................................8, 20

*Espinosa v. Delgado Travel Agency*,
    2007 U.S. Dist. LEXIS 15149 (S.D.N.Y. Mar. 2, 2007) ..........................................25

*Guerrero v. Moral Home Servs.*,
    247 F. Supp. 3d 1288, 1293 (S.D. Fla. 2017) ........................................................22

*Home Care Ass'n of Am. v. Weil*,
    76 F. Supp. 3d 138 (D.D.C. 2014) ......................................................................5, 12

*Home Care Ass'n of Am. v. Weil*,
    78 F. Supp. 3d 123, 124 (D.D.C. 2015) ..................................................................5

*Home Care Ass'n of Am. v. Weil* (*"Weil II"*),
    799 F.3d 1084 (D.C. Cir. 2015) ........................................................................ *passim*

*Hultgren v. County of Lancaster, Neb.*,
    913 F.2d 498 (8th Cir. 1990) ................................................................................14

*Jenkins v. Hanac, Inc.*,
    493 F. Supp. 2d 556 (E.D.N.Y. 2007) ....................................................................25

*Kinkead v. Humana, Inc.*
  206 F.Supp.3d 751, 754 (D. Conn. 2016) ...........................................................................2, 19

*Krumholz v. Vill. of Northport*,
  873 F. Supp. 2d 481 (E.D.N.Y. 2012) ....................................................................................21

*Lozano v. Rugfrit 1350 LLC*,
  Index No. 159570/2014, 2015 N.Y. Misc. LEXIS 1451 (N.Y. Sup. Ct. Apr.
  27, 2015) .................................................................................................................................23

*Marshall v. Atl. Container Line, G. I. E.*,
  470 F. Supp. 71 (S.D.N.Y. 1979) ......................................................................................7, 18

*Marshall v. Baptist Hosp., Inc.*,
  668 F.2d 234 (6th Cir. 1981) .............................................................................................7, 17

*McLearn v. Cowen & Co.*,
  660 F.2d 845 (2nd Cir. 1981) ................................................................................................21

*Quinn v. NY State Elec & Gas Corp.*,
  621 F.Supp. 1086 (N.D.N.Y. 1985)................................................................................ *passim*

*Rogers Cartage Co. v. Reynolds*,
  166 F.2d 317 (6th Cir. 1948) ...................................................................................................8

*Sanchez v. Burgers & Cupcakes LLC*,
  Case No. 1:16-cv-03862-VEC, Doc. 39 (S.D.N.Y. October 27, 2016)...................................12

*Short v. Churchill Ben. Corp.*,
  No. 14-cv-4561, 2016 U.S. Dist. LEXIS 48041 (E.D.N.Y. Apr. 8, 2016) .......................22, 23

*Skidmore v. Swift & Co.*,
  323 U.S. 134 (1944)................................................................................................................20

*Sosnowy v. A. Perri Farms, Inc.*,
  764 F. Supp. 2d 457 (E.D.N.Y. 2011) ...................................................................................25

*Tagaeva v. BNV Home Care Agency, Inc.*,
  No. 16-CV-6869 (RRM) (RLM), 2018 U.S. Dist. LEXIS 42081 (E.D.N.Y.
  Mar. 13, 2018).........................................................................................................................13

*Walker v. Time Life Films, Inc.*,
  784 F.2d 44, 53 (2nd Cir. 1986) ............................................................................................20

**Statutes**

29 U.S.C. § 213(b)(10) ..............................................................................................8

29 U.S.C. § 251 ......................................................................................................7, 8

29 U.S.C. § 259 ................................................................................................ *passim*

29 U.S.C. § 260 ..................................................................................................3, 21

Administrative Procedure Act ................................................................................1, 2

Fair Labor Standards Act ................................................................................. *passim*

New York Labor Law § 195(3) ....................................................................22, 23, 24

New York Labor Law § 198(1-a) ...........................................................................24

New York Labor Law § 198(1-d) ...........................................................................24

Portal-to-Portal Act ......................................................................................... *passim*

Wage Theft Prevention Act ........................................................................22, 23, 24

**Other Authorities**

29 C.F.R. § 552.6 [1975] .........................................................................................4

29 C.F.R. § 790.15(a) ........................................................................................15, 17

29 C.F.R. § 790.17(b) ..............................................................................................9

29 C.F.R. § 790.18(c) .....................................................................................10, 11, 12

29 C.F.R. § 790.18(d) ....................................................................................11, 12

78 Fed. Reg. 60454 (Oct. 13, 2013) or "Home Care Regulation" or "New Rule" ............... *passim*

80 Fed. Reg. 55029 (Sept. 14, 2015) ....................................................................6, 13

80 Fed. Reg. 65646 (Oct. 27, 2015) .....................................................................6, 13

Fed. Rule Civ. P. 12(b)(6) ......................................................................................20

New York Dept. of Labor Opinion Letter, RO-08-0086 (Aug. 26, 2009) .....................................25

## I.      INTRODUCTION

The Fair Labor Standards Act is not a trap.  Several years after Congress enacted the FLSA, it created 29 U.S.C. § 259 as part of the Portal-to-Portal Act to shield diligent employers from retroactive liability when they complied in good-faith with various forms of guidance from the U.S. Department of Labor ("DOL").  Humana relied in good faith on DOL guidance during a time period when DOL's proposed changes to the longstanding companionship exemption were in flux due to litigation.  Plaintiff now asks this Court to impose retroactive liability on Humana, despite the fact that Humana diligently followed the law as developed along with DOL's guidance.  Cases like this are the exact reason that Congress enacted the Portal-to-Portal Act. Section 259 applies to shield Humana from liability.

Between 1975 and 2015, individuals providing "companionship services" were exempt from the minimum wage and overtime requirements of the FLSA.  Industry practices and customs – including prices, wage rates, and Medicare/Medicaid reimbursement rates – were all built around the 1975 exemption.  In 2013, DOL published its Home Care Regulation, effectively eliminating the exemption.  Recognizing that the New Rule was a seismic shift in the industry, DOL gave employers more than a year, until January 1, 2015, to reformulate their businesses and reclassify a large swath of workers.

Before the New Rule ever took effect, a national home care association challenged the DOL's regulatory authority to enact the Home Care Regulation under the Administrative Procedure Act ("APA").  A convoluted rollercoaster ride followed over the next year:  the Home Care Regulation was going to take effect, then it wasn't, and then it did.  Specifically, a federal district court invalidated and vacated the New Rule in late 2014, then the D.C. Circuit reversed the lower court and issued its mandate in late 2015 to allow the New Rule to go into effect.

For employers who were paying attention, the on-off-on-again implementation created a period of great uncertainty.  Humana was paying attention.  It consistently reviewed industry updates and looked to DOL—the agency that adopted the regulation and would be empowered to enforce the regulation—for guidance on when the Home Care Regulation would become effective.  While the district court's vacatur was in effect, the regulation promulgated by DOL in 1975 remained controlling law.  Consequently, DOL had to adopt an administrative practice and enforcement policy that it would not attempt to enforce the new Home Care Regulation during the pendency of the appeal.  Even after the D.C. Circuit reversed the lower court, DOL instructed employers that the circuit opinion would not be "effective" until the mandate issued.  Recognizing the time it would take employers like Humana to implement an exemption change to a huge segment of their workforce, DOL also publicly announced a non-enforcement policy for 30 additional days beyond the Circuit Court mandate.  Under Second Circuit law, DOL's non-enforcement policy is sufficient for a complete defense to an FLSA claim under § 259.

Humana's reliance on DOL was reasonable.  The effective date for the Home Care Regulation following the APA challenge was confusing not only to employers, but also to federal courts.  This Court and others have held that the D.C. Circuit decision had retroactive effect to January 1, 2015.  (Dkt. 32.)  Other federal courts, however, have held that employers were not subject to the regulation until after the D.C. Circuit's opinion became effective.  (*Id.* at 12-13, collecting cases.)  Even Judge Meyer, one of the federal judges who held that the D.C. Circuit decision was retroactive, acknowledged that it is "not surprising that defendants refrained from paying overtime to plaintiff while the district court's decision remained valid." *Kinkead v. Humana, Inc.*, 206 F.Supp.3d 751, 754 (D. Conn. 2016).  If federal courts cannot agree on a difficult legal issue, it is not reasonable to expect an employer to predict how a future court might rule.  Relying on DOL's regulations and guidance at the time was reasonable.

Again, the FLSA is not a trap.   Indeed, in arguing in dissent to uphold DOL's interpretation of a different FLSA exemption, Justice Ginsberg articulated that § 259 provides an affirmative defense that protects employers from retroactive liability for actions taken in good-faith reliance on DOL guidance.   Section 259 is intended to protect employers like Humana who rely on DOL to help them comply with the law, even if a court later finds that to be incorrect.   Humana relied in good faith on DOL and followed DOL's guidance.   To ask more of any employer, and deny the statutory defense in the instant matter, is to write the Portal-to-Portal Act out of the FLSA.

To be clear, the issue of whether 29 U.S.C. § 259 provides a safe harbor for Humana is an entirely separate question from the Court's previous determination that the D.C. Circuit's decision was retroactively to January 1, 2015.   Notwithstanding that decision, this Court can and should find that § 259 protects Humana from liability because Humana relied in good faith on DOL's regulation, administrative practices and enforcement policies.   That question is the subject of this motion.

Accordingly, Humana hereby opposes Plaintiff's motion for partial summary judgment (Dkt. 53) and cross-moves for summary judgment on its defense under 29 U.S.C. § 259(a) and, in the alternative 29 U.S.C. § 260.   Humana further requests that, if Plaintiff's claim under the FLSA is dismissed, the Court decline to continue to exercise jurisdiction over Plaintiff's claims arising under New York law.   To the extent the Court exercises its discretion to consider the state law claims, they should be dismissed.

## II.   RELEVANT FACTUAL HISTORY

Humana previously provided this Court with the procedural history of the Companionship Exemption in its Motion to Dismiss (Dkt. 14.) and will not repeat that full history here.   Instead, Humana will outline (1) DOL's proposed Home Care Regulation, along

with Humana's knowledge of and reaction thereto, and (2) Humana's monitoring, assessment and reaction to the *Weil* litigation throughout its pendency and its reliance on DOL.  Those are the relevant facts for Humana's Portal-to-Portal Act Defense.

> **A.   DOL's 2013 Proposed Amended Regulation And Humana's Good Faith Efforts To Comply With The Anticipated Regulation Scheduled To Take Effect On January 1, 2015**

In 2013, DOL issued a "Final Rule" amending the companionship exemption regulations. *See* 78 Fed. Reg. 60454 (Oct. 13, 2013) (the "Home Care Regulation" or "New Rule").  This new Home Care Regulation provided that third-party employers could no longer "avail themselves" of the FLSA's companionship services exemption.  *See Home Care Ass'n of Am. v. Weil (Weil II),* 799 F.3d 1084, 1089 (D.C. Cir. 2015).  This marked a radical change from the 1975 Companionship Services Regulation.  *See* 29 C.F.R. § 552.6 [1975].  The Final Rule indicated that the Home Care Regulation would go into effect on January 1, 2015.  *See* 78 Fed. Reg. 60454, 60494; *see also Weil II*, 799 F.3d 1084, 1089.

Humana was well aware of the Final Rule.  Humana is a member of multiple trade organizations in the home care industry.  (Declaration of Kathy Driscoll ["Driscoll Dec."], ¶ 3.) These trade organizations use employment lawyers and others with expertise in the home care industry to provide their members with email updates that contain substantive legal issues in the industry.  (*See id.*)  Humana became aware of the Final Rule well before January 1, 2015.  (*Id.* at ¶ 4.)  Humana understood that when the Final Rule went into place, Humana's Home Health Workers would no longer be exempt from the FLSA.  (*Id.*)  As a result, Humana discussed this change internally and prepared to reclassify its Home Health Workers as non-exempt so that it would be in compliance with the new law.  (*Id.* at ¶ 5.)

**B.     Humana's Good-Faith Response To The District Court's Vacatur Of The Home Care Regulation**

Before the Home Care Regulation was scheduled to take effect, the U.S. District Court for the District of Columbia ruled that the regulation was invalid under the *Chevron* framework. *Home Care Ass'n of Am. v. Weil*, 76 F. Supp. 3d 138 (D.D.C. 2014).  The district court vacated the Home Care Regulation, thereby preventing it from going into effect.  *See id.*  Thereafter, the DOL lacked the authority to enforce the Home Care Regulation.  *Home Care Ass'n of Am. v. Weil*, 78 F. Supp. 3d 123, 124 (D.D.C. 2015)(second opinion of lower court rejecting regulation and noting that Home Care Association filed the lawsuit "to keep [the new regulation] from coming into effect on January 1, 2015").  But the district court's vacatur of the Home Care Regulations did not create a regulatory vacuum.  The 1975 regulation continued in effect.  The DOL acknowledged the impact of the district court's decision and made no attempts to enforce the Home Care Regulations in contravention of the district court's decision.

Once again, Humana was well aware of the district court decisions blocking implementation of the Final Rule.  (Driscoll Dec., ¶¶ 7, 8.)  Humana understood that the 1975 regulation remained in effect and that DOL could not and would not enforce the new regulation unless the district court opinion was overturned by a higher court.  (*Id*. at ¶¶ 9, 10, 12.)  Humana also understood that even though DOL was likely to appeal the *Weil I* decision, as an administrative practice and enforcement policy DOL would not attempt to enforce the Home Care Regulation against employers while the appeal was pending.  (*Id*. at ¶ 12.)

Based on its understanding of the state of the Home Care Regulation and DOL's position, Humana reconsidered the decision to reclassify its Home Health Care workers.  (*Id*. at ¶ 14, 15.)  Ultimately, Humana relied on industry updates, the then-effective 1975 regulation, and DOL's administrative practice and non-enforcement policy in deciding that Humana would continue to treat its Home Health Workers as exempt while the DOL's appeal was pending.  (*Id*.)  Based on

the then-effective 1975 regulation, as well as DOL's administrative practices and enforcement policies at that time, Humana believed that doing so would not violate the FLSA or any other laws. (*Id*. at ¶ 15.) Humana's goal, as always, was to comply with the law. (*Id*. at ¶ 5)

**C.    Humana's Good-Faith Response To The Circuit Court's Reversal Of The Lower Court**

The DOL appealed the district court ruling, and on August 21, 2015, the D.C. Circuit reversed the lower court. *See Weil II,* 799 F.3d at 1087. The D.C. Circuit issued its mandate on October 13, 2015. *See* 80 Fed. Reg. 65646 (Oct. 27, 2015).

The invalidation, vacatur and (many months later) subsequent reaffirmation of the new regulation created uncertainty and confusion amongst employers in the home care industry. The DOL was quick to step in and provide employers with clear and consistent direction on their obligations with regard to the Home Care Regulation. Namely, DOL made clear that it would not enforce the Home Care Regulation until 30 days after the mandate in *Weil II* issued. *See* "Application of the Fair Labor Standards Act to Domestic Service; Announcement of 30-Day Period of Non-Enforcement," 80 Fed. Reg. 55029 (Sept. 14, 2015) (filed by Plaintiff as Ex. B to Declaration of Jon L. Norinsberg, Esq. [ECF 56]). Once the mandate issued, the DOL clarified that the agency would not bring enforcement actions for violations of the new regulation prior to November 12, 2015. (*See* "Application of the Fair Labor Standards Act to Domestic Service: Dates of Previously Announced 30-Day Period of Non-Enforcement," 80 Fed. Reg. 65646 (Oct. 27, 2015) (filed by Plaintiff as Ex. C to Declaration of Jon L. Norinsberg, Esq. [ECF 56]). Thus, the administrative practices and enforcement policies of the DOL clearly advised employers that DOL did not believe the new Home Care Regulation to be enforceable until (and unless) it prevailed in *Weil II*, and it did not commence enforcement of the Home Care Regulation until November 12, 2015.

Once again, Humana kept up with the litigation and how it impacted the Final Rule. (Driscoll Dec., ¶¶ 16-19.)  Humana learned that the D.C. Circuit's decision would not become effective until October 13, 2015.  (*Id*. at ¶ 18.)  Humana also learned that the DOL would not enforce the Home Care Regulation for another 30 days after that, until November 12, 2015.  (*Id*.)  Humana discussed the lawsuit and those policies internally.  (*Id*. at ¶ 19.)  Humana ultimately decided to make previously exempt Home Health Workers overtime eligible starting on or about November 12, 2015.  (*See* Dkt. 55, ¶ 10.)  Humana relied on the DOL's written non-enforcement policies issued after *Weil* II in deciding that Humana would continue to treat its companionship employees as exempt until November 12, 2015.  (*See* Driscoll Dec., ¶ 19.)  Based on those enforcement policies, Humana believed that its actions complied with the FLSA.  (*Id*.)

## III.   LEGAL ARGUMENT

The Portal-to-Portal Act provides Humana a complete defense to FLSA liability. Summary judgment is appropriate on defenses under the Portal-to-Portal Act, including a defendant's claim for a complete defense under 29 U.S.C. § 259(a).  *Quinn v. NY State Elec & Gas Corp.*, 621 F.Supp. 1086, 1089 (N.D.N.Y. 1985) (granting summary judgment, finding that defendant had established § 259 defense); *Marshall v. Atl. Container Line, G. I. E.*, 470 F. Supp. 71, 74 (S.D.N.Y. 1979) (same).

"The Congressional purposes behind the Portal to Portal Act are stated in its first section."  *Marshall v. Baptist Hosp., Inc.,* 668 F.2d 234, 237-38 (6th Cir. 1981).  In Section 1, Congress found that the FLSA had "been interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees, thereby creating wholly unexpected liabilities, immense in amount and retroactive in operation, upon employers…"  29 U.S.C. § 251.  Congress found that imposing retroactive liability on employers could lead to "financial ruin" of employers, thereby curtailing employment opportunities for workers; creating

uncertainty; awarding "windfall payments" to employees who had no "expectation of reward" beyond their agreed-upon rates; and burdening the judicial system. *Id.*

The Portal-to-Portal Act defense is intended to insulate an employer from liability when their actions – even if later found to be wrong – were performed in good faith reliance on DOL. Specifically, Section 259(a) of the Portal-to-Portal Act provides a complete defense to liability if the employer "proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of [Department of Labor] or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged." 29 U.S.C. § 259(a).

Justice Ginsberg, as noted above, recently described § 259 as providing an "affirmative defense that explicitly protects regulated parties from retroactive liability for actions taken in good-faith reliance on *superseded agency guidance*." *Encino Motors, LLC v. Navarro*, 138 S.Ct. 1134, 1147, 200 L.Ed.2d 433, 447 (2018) (*in dissent, emphasis added*); *see also Encino Motors, LLC v. Navarro*, 136 S.Ct. 2117, 2128, 195 L.Ed.2d 382, 398 n. 2 (2016) (*concurring*).   In *Encino Motors*, the Supreme Court ultimately construed the exemption for certain employees of automobile dealerships (29 U.S.C. § 213(b)(10)) in the employer's favor, resolving longstanding confusion regarding whether "service advisors" were sales employees.  In arguing that they were not exempt, Justice Ginsburg noted that such a ruling would create no retroactive liability for industry employers in light of 29 U.S.C. § 259, provided the employers were following along with DOL's guidance.

Defenses under § 259(a) should not be brushed aside lightly.  When a valid defense is established, the cause of action must be dismissed.  *See, e.g., Bouchard v. Reg'l Governing Bd. of Region V Mental Retardation Servs.,* 939 F.2d 1323, 1334 (8th Cir. 1991) (describing § 259(a) as "jurisdictional in nature"); *Rogers Cartage Co. v. Reynolds*, 166 F.2d 317, 320 (6th Cir. 1948)

(defense is "mandatory").  Moreover, the Second Circuit has long recognized that an employer who relies on a DOL non-enforcement policy must be shielded from complete liability, even though that DOL policy did not prevent private plaintiffs from filing suit on the underlying issue. *See Darr v. Mut. Life Ins. Co.* 169 F.2d 262 (2nd Cir. 1948).  In other words, the exact situation we have here.

Humana has a complete defense to Plaintiff's FLSA claims prior to November 12, 2015, because Humana relied in good faith on the then-effective 1975 regulations, as well as DOL's administrative practices and enforcement policies stating that the Home Care Regulation would not be enforced until November 12, 2015.  As set out below, Humana establishes the three elements of the § 259(a) defense:  (1) that its action was taken in reliance on a DOL ruling, interpretation, administrative practice or enforcement policy (2) that it was in conformity with that ruling, interpretation, administrative practice or enforcement policy, and (3) that its actions were in good faith.  *See EEOC v. Home Ins. Co.,* 672 F.2d 252, 263 (2nd Cir. 1982); 29 U.S.C. § 259(a).

> **A.**  **Element 1: Humana Relied On The Then-Effective 1975 Regulation, As Well As DOL's Administrative Practices And Enforcement Policies**
>
>> 1.  Employers Are Entitled To Rely On Regulations, Administrative Practices And Enforcement Policies From DOL

An employer's § 259 defense may be based on, among other forms of guidance from DOL, a "regulation," an "administrative practice," or an "enforcement policy."  29 U.S.C. § 259(a).  The term regulation refers to the "great variety of authoritative rules issued pursuant to statute by an administrative agency, which have the binding effect of law."  29 C.F.R. § 790.17(b).

The phrase "administrative practice or enforcement policy," on the other hand, refers to less formal "courses of conduct or policies" that the DOL "has determined to follow in the

administration and enforcement of a statute, either generally, or with respect to specific classes of situations." 29 C.F.R. § 790.18(a).  Administrative practices or enforcement policies need not be in writing.  They "may be" but are not always "set forth in statements addressed by the agency to the public."  *See id.*  The DOL may maintain an administrative practice "for a limited time only", such as while awaiting "a final decision in pending litigation."  *Id.*

Employers are entitled to rely on an enforcement policy even if it differs from the agency's interpretation of the meaning or legal effect of the law; an enforcement policy "may be based wholly or in part on other considerations."  *Id.; see also* 29 C.F.R. § 790.18(c).  The controlling regulations recognize that, in an analogous situation to the case at bar, following a court decision which changed the applicable law, a DOL enforcement policy may give employers a set amount of time to "make the adjustments necessary."

> An administrative practice or enforcement policy may, under certain circumstances be at variance with the agency's current interpretation of the law.  For example, suppose the Administrator announces that as a result of court decisions he has changed his view as to coverage of a certain class of employees under the Fair Labor Standards Act.  However, he may at the same time announce that in order to give affected employers an opportunity to make the adjustments necessary for compliance with the changed interpretation, the Wage and Hour Division will not commence to enforce the Act on the basis of the new interpretation until the expiration of a specified period.

29 C.F.R. § 790.18(c).  Notably, the regulation does not care whether the court decision was given retroactive effect.  An employer who relies on the DOL non-enforcement policy in good faith can receive the benefit of the complete defense under § 259.

The Second Circuit also recognizes that an employer who relied on a DOL non-enforcement policy can be shielded from liability, even though that DOL policy did not prevent private plaintiffs from filing suit.  *See Darr v. Mut. Life Ins. Co.*, 169 F.2d 262 (2nd Cir. 1948).  The plaintiffs in *Darr* were elevator operators who worked in the office building of an insurance

company.  *Id*. at 263.  Much of the litigation centered on whether the insurance industry was engaged in interstate commerce.  *See id*. at 264.  The employer argued that it was not engaged in interstate commerce and, therefore, was not subject to the FLSA.  *Id*.  For that reason, prior to December 1940 the employer had treated the plaintiffs as if the FLSA did not apply.  *Id*. at 266. The court disagreed, finding that the insurance industry was engaged in interstate commerce and the FLSA did apply to the plaintiffs.  *Id.* at 264-65.

Even though the court found that the FLSA applied to the insurance industry, no award of damages was entered against the employer because DOL had maintained an administrative practice and enforcement policy "not to enforce the provisions of the Fair Labor Standards Act in the insurance business."  *Id*. at 265-66.  The Southern District found, and the Second Circuit affirmed, that the employer had relied in good faith and acted in conformity with DOL's non-enforcement policy.  *Id*.  While a private plaintiff was always free to bring suit, the DOL made no attempts to enforce the FLSA in the insurance industry until 1942.  *See id*. at 266.  Therefore, the employer who could show that it had paid attention to DOL's position on the issue was entitled to the "complete defense" offered by 29 U.S.C. § 259.  *Id*.; *see also* 29 C.F.R. § 790.18(d) (acknowledging that employer who diligently follows a DOL enforcement position is relieved from liability from private actions "(1) where such practice or policy was based on the ground that an act or omission was not a violation of the (Fair Labor Standards) Act, or (2) where a practice or policy of not enforcing the Act with respect to acts or omissions led the employer to believe in good faith that such acts or omissions were not violations of the Act.").

2.     <u>Humana Relied On DOL's 1975 Regulation, Administrative Practices,</u>
<u>And Enforcement Policies</u>

The *Weil* litigation was not a run-of-the-mill FLSA enforcement action.  Rather, *Weil* questioned whether DOL had the lawful regulatory authority to enact the Home Care Regulation. The district court concluded that the agency did not have the authority to enact the regulation.

To that end, the district court did not merely rule in favor of the Plaintiffs – it affirmatively invalidated and vacated the Home Care Regulation. *See* 76 F. Supp. 3d at 148. This decision did not create a regulatory vacuum. The pre-existing 1975 regulation remained in effect at that time.

Although the DOL appealed the decision, the agency was not free to disregard the district court's order and attempt to enforce the Home Care Regulation. The agency, accordingly, had to adopt an administrative practice and enforcement policy not to enforce the Home Care Regulation during the pendency of the appeal. That practice or policy was premised on the belief that continuing to treat companionship employees as exempt from the FLSA under the 1975 regulation was not a violation of the Act. *See* 29 C.F.R § 790.18(d). To the extent the Court has questions about the DOL's administrative practices and enforcement policies during the pendency of the appeal in *Weil*, Humana respectfully suggests that the Court invite the DOL to be heard on the question as has been done in other cases involving FLSA. *See, e.g., Sanchez v. Burgers & Cupcakes LLC*, Case No. 1:16-cv-03862-VEC, Doc. 39 (S.D.N.Y. October 27, 2016) (soliciting DOL input regarding the application of FRCP 68(a) in FLSA cases).

Leading up to the initial January 1, 2015 effective date, Humana closely followed the *Weil* litigation. Humana knew that the district court had temporarily enjoined the Home Care Regulation before it went into effect, and that the court had ultimately invalidated and entirely vacated the New Rule. (Driscoll Dec., ¶¶ 6-10, 12.) Humana also understood that the pre-existing 1975 regulation remained in effect and that DOL would not be able to enforce the new Home Care Regulation unless the district court's decision was overturned by a higher court. (*Id.*) Therefore, instead of reclassifying its Home Health Workers as planned, Humana relied on the still-effective 1975 regulations, along with DOL's administrative practice and enforcement position to continue to treat its companionship employees as exempt. (*Id.*, ¶¶ 14-15); *see also Quinn* 621 F.Supp. at 1090 (holding that § 259 defense applies where employer "retains" pre-

existing practice in reliance on regulations that the agency had "proposed" to rescind, but had not been "in fact" rescinded at that time).[1]

As a diligent employer, Humana did not stop paying attention following the industry's victory in *Weil*. Humana continued to follow the case and DOL's guidance. Humana eventually became aware that the lower court was reversed by the D.C. Circuit in August of 2015. (Driscoll Dec., ¶¶ 16-18); *see also Weil II*, 799 F.3d 1084. Although the D.C. Circuit reversed the invalidation of the Home Care Regulation, DOL quickly issued written enforcement policies stating that the Home Care Regulation would not be enforced for an additional 30 days after the mandate issued, or until November 12, 2015. (Driscoll Dec., ¶ 18); *see also* 80 Fed. Reg. 55029 (Sept. 14, 2015); 80 Fed. Reg. 65646 (Oct. 27, 2015).

Humana learned of the DOL's enforcement policies through the industry associations and conversations with others in the industry. (Driscoll Dec., ¶¶ 18, 19.) DOL's non-enforcement policy led Humana to believe that treating companionship employees as exempt would not violate the FLSA until November 12, 2015. (*See id*.) Humana relied on the DOL non-enforcement policy in determining when it would reclassify its Home Health Workers as non-exempt. (*Id*.) Neither the industry associations nor the DOL enforcement position made any mention of the possibility that the D.C. Circuit's decision would have a retroactive effect to January 1, 2015. (*Id*. at ¶ 20.)

Put simply, Humana – who diligently monitored the state of the Home Care Regulation – learned from the DOL at the relevant time that enforcement of the new regulation would not start until November 12, 2015. Given the DOL's unique status as the agency charged with both the

---

[1] To be clear, Humana is <u>not</u> relying on DOL's litigation position in *Weil* to support its § 259 defense. <u>Nor</u> is Humana relying on the district court's decision in *Weil*. *Cf. Tagaeva v. BNV Home Care Agency, Inc.*, No. 16-CV-6869 (RRM) (RLM), 2018 U.S. Dist. LEXIS 42081, at *11 (E.D.N.Y. Mar. 13, 2018) (§ 259 reliance cannot be based on judicial decision). Following the district court's decision, Humana relied on the 1975 regulations which, at the time, had not yet been superseded by the new Home Care Regulations. Humana further relied on DOL's administrative practice and enforcement policy not to attempt to enforce the new regulation in contravention of the district court's decision.

creation and primary enforcement of the Home Care Regulation, it was reasonable and in good faith for Humana to rely on the DOL's non-enforcement policies.

    **B.**    <u>**Element 2**</u>**: Humana Acted In Conformity With DOL's 1975 Regulation, Administrative Practices, And Enforcement Policies**

For § 259 to shield an employer from liability, the employer must prove that "its actions actually conformed with" the DOL's regulation, administrative practices and enforcement policies. *Hultgren v. County of Lancaster, Neb.*, 913 F.2d 498 (8th Cir. 1990). At all relevant times, Humana acted in conformity with the DOL regulation, administrative practices and enforcement policies on which it relied.

This element is simple. Prior to the Home Care Regulation (under the 1975 regulations), companionship employees were exempt from the minimum wage and overtime requirements of the FLSA. Humana had historically treated its Home Health Workers as exempt based on that law. (Driscoll Dec., ¶ 11.) Following the district court decision vacating the New Rule, the 1975 regulations remained in force. Humana continued to rely on the 1975 regulations and treat its Home Health Workers as exempt based on that law. (Driscoll Dec., ¶ 15.) There is no dispute that Plaintiff's duties satisfied the 1975 companionship exemption. (Complaint, Dkt. 1, ¶ 18; *see also* Driscoll Dec., ¶ 11.)

When the D.C. Circuit allowed the New Rule to take effect, Humana based its decision on when to reclassify its Home Health Workers in light of the *Weil* litigation on DOL's formal written enforcement policies. (Driscoll Dec., ¶¶ 18-20.) DOL, through its enforcement policies, instructed employers that they could continue to treat third-party companionship employees as exempt through November 12, 2015. *See supra.* And Humana followed that guidance. (*See* Driscoll Dec., ¶ 19.)

C.     **Element 3**: **Humana Relied On DOL's 1975 Regulation, Administrative Practices, And Enforcement Policies In Good Faith**

To avail itself of the good faith defense under the Portal-to-Portal Act, an employer must rely on the DOL's guidance "in good faith."  29 U.S.C. § 259(a).  "The defense of good faith is intended to apply only where an employer innocently and to his detriment, followed the law as it was laid down to him by government agencies, without notice that such interpretations were claimed to be erroneous or invalid."  *Quinn*, 621 F.Supp. at 1091.  The "good faith" requirement has both a subjective and an objective element.  *See* 29 C.F.R. § 790.15(a).  As noted below, Humana acted with both subjective and objective good faith.

1.     Humana Acted With Subjective Good Faith

The subjective element of good faith examines the employer's "actual state of mind." 29 C.F.R. § 790.15(a).  Subjective good faith requires an "honesty of intention and no knowledge of circumstances which ought to put [the employer] upon inquiry."  *Id*.  The DOL's regulations give examples of the types of "circumstances" that might put an employer "upon inquiry" that the DOL's interpretations and enforcement policies should no longer be relied upon.  For instance, the regulations postulated that an employer would not act in good faith if it relied on an administrative interpretation if the employer learned that the case law underlying the interpretation had been overturned.  *Id*.  Similarly, the regulations make clear that an employer with "knowledge of conflicting rules" does not act in good faith when it simply "chose to act in accordance with the one most favorable to" the employer.  29 C.F.R. § 790.15 at n 99.  Neither of those situations happened here.

Instead, Humana clearly acted with subjective good faith.  Humana's attention to the industry-wide *Weil* litigation again puts that in stark relief.  Humana followed along with the industry's challenge, including reviewing numerous industry association email updates (many authored by employment attorneys) and talking with others in the industry.  (*See generally*

15

Driscoll Dec.)  Humana understood that the district court's decision to vacate the new Home Care Regulation did <u>not</u> create a regulatory vacuum – the 1975 regulation continued in effect. (Driscoll Dec., ¶ 14.)  Humana relied on the 1975 companionship exemption, with which it was extremely familiar and already in compliance.  (*Id*. at ¶¶ 11, 15.)  DOL's administrative practices and enforcement policies at the time similarly caused Humana to believe that the new Home Care Regulation had no force or effect.  (*Id*. at ¶ 15.)

Before *Weil II* and DOL's formal enforcement policies published thereafter, there were no conflicting rules or anything to put Humana "upon inquiry" that the Home Care Regulations were, somehow, in force or applicable to its companionship employees at that time.  From the perspective of a reasonable employer, it was equally likely that the D.C. Circuit would have affirmed the district court's opinion invalidating the Home Care Regulation.  Neither the DOL nor any other source put Humana on notice that the Home Care Regulation was capable of being enforced (let alone that there could be actual enforcement during that time period).  (Driscoll Dec., ¶ 13.)

Following the D.C. Circuit's opinion in *Weil II*, Humana had an honestly-held belief based on DOL's formal, published enforcement policies that the Home Care Regulation would not apply to its companionship employees until November 12, 2015.  (Driscoll Dec., ¶¶ 18, 19.) Nothing in the *Weil II* opinion or the subsequent DOL enforcement policies made any mention of retroactive application or put Humana "upon inquiry" that the DOL's formal and affirmative guidance may be telling only half the story.  Significantly, based on DOL's non-enforcement policies, Humana subjectively believed that they were in compliance with the FLSA.  (*Id*. at ¶ 19.)  Consequently, Humana meets the element of subjective good faith.

16

2.    Humana Acted With Objective Good Faith

The objective element of good faith inquires whether the employer "acted as a reasonably prudent [person] would have acted under the circumstances." *Quinn*, 621 F. Supp. at 1091(*citing* 29 C.F.R. § 790.15(a)).   The requirement for objective good faith serves to limit application of the § 259(a) defense when the administrative interpretation relied upon is "uninformative and leaves the employer to make his own reading of the precise requirements of the statute." *Home Ins.*, 672 F.2d at 266.

Unlike the complicated pension issues raised in *Home Insurance*, the guidance and enforcement policies put forth by the DOL here were quite simple.   Employers looked to the DOL's regulations, practices and policies to determine whether they were required to comply with the new Home Care Regulations.   After the Home Care Regulation had been vacated, the DOL regulation in effect at the time was the 1975 companionship regulation.   The 1975 regulation, along with the 45 years of precedent interpreting the rule, unambiguously instructed that Humana's Home Health Workers could be treated as exempt.   Moreover, DOL's administrative practices and enforcement policies were far from "uninformative."   They gave an unambiguous answer (New Rule not enforced at that time) and provided a specific date on which the Home Care Regulation would be enforced (November 12, 2015).[2]

In that respect, this case is much more similar to *Quinn v. NY State Elec & Gas Corp.* 621 F.Supp. 1086, 1089 (N.D.N.Y. 1985) (granting summary judgment in favor of defendant's § 259 defense).   In *Quinn*, the employer relied on regulations that "set forth very clear requirements for bona fide apprenticeship programs."   *Id.* at 1091.   Similar to this case, the agency had proposed to rescind the regulation at issue in *Quinn*.   *Id.* at 1090-91.   During the time

---

[2] Even if the DOL's position had been ambiguous, Humana still gets the benefit of the doubt.   "The language and legislative history of this Act indicate that courts should be hesitant to impose retroactive [FLSA] liability on employers in the face of an administrative interpretation which the employer could plausibly interpret as insulating him from liability."   *Marshall*, 668 F.2d at 238.

that the employer relied on the regulation, however, "it was not *in fact* rescinded."  *Id*. at 1091

(emphasis in original).  Accordingly, "[i]t was perfectly reasonable conduct on the part of the

defendant to assume the validity of the regulation until it was actually rescinded…"  *Id*.[3]

Under the facts known at the time, it was objectively reasonable for Humana to continue

to rely on the 1975 companionship exemption following the district court's decision in *Weil*.

The Home Care Regulation had not (at the time) rescinded the previous regulation; consequently,

the 1975 regulation remained in force.  There was no contrary authority and the D.C. Circuit had

not yet overturned the decision.  The 1975 regulation was the law until the D.C. Circuit issued its

mandate in October.  Even after the mandate issued, DOL published two enforcement policies

stating that it would not attempt to enforce the Home Care Regulation until thirty days after the

mandate (November 12, 2015).  *See Marshall v. Atl. Container Line, G. I. E.,* 470 F. Supp. 71,

74 (S.D.N.Y. 1979) (employer "was entitled to rely" on "published" guidance from DOL;

granting summary judgment on employer's defense).

Even courts, with the benefit of hindsight, agree that Humana and other employers acted

reasonably by continuing to rely on the 1975 companionship exemption during that period.  The

D.C. Circuit, for instance, noted that third party employers could "make use of the

companionship-services exemption" following the district court's vacatur of the new regulation.

*Weil II*, 799 F.3d at 1090.[4]   Similarly, the District of Connecticut noted that it was "not

---

[3] The regulation in *Quinn* was never actually rescinded.  *See id*. at 1091.  Nonetheless, the case is on point for the time period between the district court opinion and the D.C. Circuit's mandate.  During that time, the DOL had proposed to rescind the 1975 regulation (and replace it with the New Rule) but the 1975 regulation had not "in fact" been rescinded.

[4] This Court previously held that the D.C. Circuit's choice of words did not indicate that the *Weil II* decision was to be enforced on a prospective-only basis.  (Dkt. 32 at 15.)  Humana's present motion does not seek to disturb that ruling.  Rather, Humana cites the language from the D.C. Circuit only to demonstrate that – given the facts known at the time and its careful monitoring of the DOL's guidance – it was objectively reasonable for Humana to have relied on the DOL's administrative practice and enforcement policy not to enforce the Home Care Regulations while the appeal in *Weil* was pending. Obviously, not every employer can make the same showing that they had knowledge of and explicitly relied on the DOL.

surprising" that Humana continued to rely on the companionship exemption following the
district court's decision:

> In light of the fact that the district court vacated the new rule, it is
> not surprising that defendants refrained from paying overtime to
> plaintiff while the district court's decision remained valid.

*Kinkead*, 206 F.Supp.3d at 754.  Humana's reasonableness is also demonstrated by the numerous
cases alleging that third-party employers continued to treat companionship employees as exempt
through October and November 2015.  Notably, to this day, district courts are split as to whether
the opinion in *Weil II* is retroactive to January 1, 2015 or not.

When neither the agency that created the Home Care Regulation nor any court had
concluded that the new regulation could be lawfully enforced (let alone enforced retroactively),
Humana could hardly have been expected to reach such a conclusion on its own.  *See Quinn*, 621
F.Supp. at 1091.  With 20/20 hindsight, federal courts still disagree on whether the Regulation is
retroactive.   The disagreement in the case law is further evidence that it was objectively
reasonable for Humana to believe its actions were lawful at the time.  Thus, from January 1,
2015, to October 13, 2015, Humana acted with objective good faith in relying on the then-
effective 1975 regulation, as well as DOL's administrative practices and enforcement policies
that the new Home Care Regulation was not enforceable.

Likewise, it was objectively reasonable for Humana to rely on the DOL's non-
enforcement policies stating that the Home Care Regulations would not be enforced for an
additional 30 days after the D.C. Circuit issued its mandate.  Courts frequently defer to an
administrative agency's decisions on enforcement, because they are "the product of deliberation
and analysis by the entity charged with application of the statute."  *Alvarez v. IBP, Inc.*, 339 F.3d
894, 908 (9th Cir. 2003).  Deference is particularly fitting here, as the Home Care Regulation
was created entirely by the DOL.   Moreover, distinctions between public and private

enforcement of the FLSA are strongly disfavored: "Good administration of the Act and good judicial administration alike require that the standards of public enforcement and those for determining private rights shall be at variance only where justified by very good reasons." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).  From the employer's point-of-view, the DOL's written enforcement policies indicated, without qualification, that the Home Care Regulation would not be enforced until November 12, 2015.

Section 259(a) sets out, as Justice Ginsberg describes it, an "affirmative defense that explicitly protects regulated parties from retroactive liability" when they relied in good faith on guidance from the Department of Labor.  *See Encino Motors,* 138 S.Ct. at 1147 (*in dissent*).  The statute is designed so that employers do not have to second-guess the guidance that they receive from the DOL and offers employers a safe harbor when courts disagree with DOL after the fact.

That is exactly case here.  Humana relied on the then-existing 1975 regulation, along with DOL's administrative practices and enforcement policies.  It was told that the Home Care Regulation would not be enforced until November 12, 2015.  Humana's reliance was in good faith and reasonable.  Section 259(a), therefore, shields Humana from liability.  Plaintiff's FLSA claim must be dismissed.

## IV. BECAUSE PLAINTIFF'S FLSA CLAIM SHOULD BE DISMISSED, THIS COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS

Absent "'exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, federal courts should 'abstain from exercising pendent jurisdiction.'"  *Birch v. Pioneer Credit Recovery, Inc.*, 06 Civ. 6497 (MAT), 2007 U.S. Dist. LEXIS 41834, at *15 (W.D.N.Y. June 8, 2007) (*quoting Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2nd Cir. 1986)).  Factors to consider in assessing whether "exceptional circumstances" which might warrant the exercise of such jurisdiction are present include "(1) the

length of time the matter has been pending before the federal court; (2) the proximity of the trial date; and (3) the predominance of issues of federal, as opposed to local concern." *Birch*, 2007 U.S. Dist. LEXIS 41834, at *16 (*citing McLearn v. Cowen & Co.*, 660 F.2d 845 (2nd Cir. 1981)).

No such circumstances are present here.  Even in FLSA cases proceeding to the summary judgment stage, New York federal courts have declined to exercise supplemental jurisdiction where summary judgment disposes of federal claims.  *See*, *e.g.*, *Krumholz v. Vill. of Northport*, 873 F. Supp. 2d 481, 492 (E.D.N.Y. 2012) ("the Court declines to retain jurisdiction over the remaining state law claims given the absence of any federal claim that survives the summary judgment motion and dismisses any such claims without prejudice").  Lacking federal question jurisdiction, the Court should dismiss the balance of Plaintiff's Complaint without prejudice.

## V.    IN THE ALTERNATIVE, PLAINTIFF'S REQUEST FOR LIQUIDATED DAMAGES SHOULD BE DENIED BECAUSE HUMANA ACTED WITH GOOD FAITH

The Portal-to-Portal Act also provides employers with a defense against plaintiff's claims for liquidated damages under the FLSA if the employer "shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation" of the Act.  29 U.S.C. § 260. If the employer acted in good faith, the district court may, in the exercise of its discretion, choose not to award liquidated damages.  *Id.*

Based on the 1975 regulations, DOL's administrative practice and enforcement policies (as described above), along with the district court's opinion invaliding and vacating the Home Care Regulation, Humana had a good faith basis to believe that it was not required to pay Plaintiff overtime wages between January 1, 2015 and November 12, 2015.  Thus, Humana's

failure to pay overtime compensation was in good faith and liquidated damages should not be assessed. *See Guerrero v. Moral Home Servs.*, 247 F. Supp. 3d 1288, 1293 (S.D. Fla. 2017).

## VI.   TO THE EXTENT THE COURT CHOOSES TO CONSIDER PLAINTIFF'S STATE LAW CLAIMS, THEY MUST BE DISMISSED

### A.   Plaintiff's Application for "Derivative" Wage Theft Prevention Act Damages Must Be Rejected, And Summary Judgment Granted To Humana

New York Labor Law § 195(3) requires that an employer "furnish each employee with a statement with every payment of wages" listing certain information. "For all employees who are not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation, the statement shall include the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked, and the number of overtime hours worked." *Id*. Plaintiff's own internally inconsistent Declaration submitted in support of her motion incredibly denies that she received wage statements, while attaching same. (*compare* Dkt. 56-4, ¶ 11 *with id.,* Ex. A ("I was never provided with any form of wage statements…To the extent that wage statements were provided, they were improper").) Indeed, Defendant complies with the WTPA and provided wage statements to Plaintiff. (*Id*.)

Plaintiff asserts that the statements provided violated the statute because they "failed to record overtime hours and the required overtime pay rate." (Dkt. 54 at 17.) Even if Plaintiff ultimately establishes that she was misclassified and entitled to overtime during this period, this would not also constitute a "derivative" violation of this provision. New York Labor Law § 195(3), requiring employers to provide specific wage statement information, was added to the Labor Law as part of the 2011 Wage Theft Prevention Act ("WTPA"). The purpose of the provision was to require employers to provide wage statements containing certain information so that an employee could understand how s/he was being compensated, and by whom. *Short v.*

*Churchill Ben. Corp.*, No. 14-cv-4561, 2016 U.S. Dist. LEXIS 48041, at *65-6 (E.D.N.Y. Apr. 8, 2016) (WTPA wage notice and statement requirements passed because "many employers are failing to adequately inform their employees of their wages and *how they are calculated* in a language they can comprehend") (emphasis added).

By providing a wage notice and wage statements (which Humana did), Humana explained exactly how Plaintiff's wages were being underlined calculated at that time. The wage statements Humana provided included all of the requisite information, including wages and hours based on the hourly representation of the day rate Humana paid Plaintiff for working live-in shifts. (*See* Declaration of Noel P. Tripp, Ex. B (Caregiver Agreement with day rates for live-in work and hourly breakdown based on instructed work hours) and Dkt. 56-4 at ¶ 3 (confirming receipt of Caregiver Agreement) and Ex. A (statements reflecting shifts and payments based on Caregiver Agreement)); *Lozano v. Rugfrit 1350 LLC*, Index No. 159570/2014, 2015 N.Y. Misc. LEXIS 1451, at *13 (N.Y. Sup. Ct. Apr. 27, 2015) (finding no violation of NYLL § 195(3) where wage statements identified "the hours worked, the rate of pay, the restaurant name, taxes withheld, meal deductions, and definitions of certain terms, including ones for REGTIP and OT TIP" because "even if defendants somehow left a box unchecked or engaged in another trivial mistake, plaintiff was not harmed by this and was fully paid").

That the Section 195(3) requirement (and its corresponding statutory cause of action) was created to enhance transparency, and not to create an additional penalty for misclassification violations by making any misclassification violation a *per se* violation of this provision, is reinforced by the separate and substantial remedies available for any failure to pay overtime, which remedies were *separately increased by the WTPA*. *Ayala v. Your Favorite Auto Repair & Diagnostic Ctr., Inc.*, No. 14-cv-5269, 2016 U.S. Dist. LEXIS 127425, at *92 (E.D.N.Y. Sept. 16, 2016) (reflecting WTPA's increase in liquidated damages available for violation of the

NYLL from 25% to 100%).  Only employers who fail to provide wage statements containing overtime hours worked by employees classified as non-exempt violate N.Y. Labor Law § 195(3), and are thus potentially liable for the amounts set forth in N.Y. Labor Law § 198(1-d). Employers who misclassify workers (as alleged here) may be liable for wages found to be owed and 100% liquidated damages, not for an additional penalty.  N.Y. Labor Law § 198(1-a) ("In any action instituted in the courts upon a wage claim by an employee…in which the employee prevails, the court shall allow such employee to recover the full amount of any underpayment, all reasonable attorney's fees, prejudgment interest as required under the civil practice law and rules, and, unless the employer provides a good faith basis to believe that its underpayment of wages was in compliance with the law, an additional amount as liquidated damages equal to one hundred percent of the total amount of the wages found to be due…").  Plaintiffs' theory of damages turns the WTPA into an unfair and unintended penalty provision.  It must be rejected, and their claim under New York Labor Law § 195(3) dismissed.

Even if Plaintiff's theory could support a violation, Humana's good faith conduct as set forth above extends to its good faith in continuing to provide "exempt" wage statements.  The WTPA provides an affirmative defense to employers which pay all wages due and owing, and a separate one to those which reasonably believe they did not have to give notice or statements required under the Law.  N.Y. Labor Law § 198(1-d).  Here, Humana qualifies for both.  As set forth above, it did not fail to pay Plaintiff any wages due and owing.  Even if it is found to have done so, despite its good faith attempts to comply with the FLSA and analogous provisions of the NYLL, it did not fail to give wage statements; it gave them.  To the extent it "failed" to provide statements listing overtime hours worked by exempt-classified companions, it reasonably believed it did not have to do so.  *See Cabrera v. Schafer*, 222 F. Supp. 3d 250 (E.D.N.Y. 2016).

### B.    Plaintiff's Spread-Of-Hours Claim Must Be Dismissed

The spread-of-hours regulation is "properly limited to enhancing the compensation of those receiving only the minimum required by law." *Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp. 2d 457, 474 (E.D.N.Y. 2011); *see also Jenkins v. Hanac, Inc.*, 493 F. Supp. 2d 556, 558 (E.D.N.Y. 2007) ("the regulation 'does not ensure additional compensation to employees whose wages sufficiently exceed [the minimum wage] floor'"); *Espinosa v. Delgado Travel Agency*, 2007 U.S. Dist. LEXIS 15149, at *6-8 (S.D.N.Y. Mar. 2, 2007) (same).   The New York Department of Labor has confirmed that "the 'spread of hours' regulation does not require all employees to be paid for an additional hour, but merely that the total wages paid be equal to or greater than the total due for all hours at the minimum wage plus one additional hour at the minimum wage." (Declaration of Noel P. Tripp, Ex. A, Opinion Letter, RO-08-0086 (New York Dep't of Labor Aug. 26, 2009)).

As Plaintiff concedes, she was paid at rates above the 2015 New York minimum wage of $9 per hour.  (*See generally* Dkt. 56-4)   Her hourly rate allegations confirm that she would not have qualified for spread-of-hours.  (*Id*. ¶ 5 (working 12 hours at $1/hour above minimum wage, resulting in 12 * $1 = $12 above minimum wage, greater than the potential spread-of-hours payment of $9).  For "live-in" shifts, she was paid either $130 or $150 for the shift. (Declaration of Noel P. Tripp, Ex. B; *see also* Dkt. 56-4, ¶ 5.)  She has not alleged hours to support that her effective rate of pay fell below $9 per hour, and thus her claim for spread-of-hours fails.

## VII.    CONCLUSION

For the foregoing reasons, the Court should DENY Plaintiff's motion for summary judgment, GRANT Defendant's cross-motion for summary judgment, and refuse to exercise supplemental jurisdiction of Plaintiff's state law claims.  In the alternative, the Court should

GRANT Defendant's cross-motion for summary judgment as to Plaintiff's claim for liquidated damages.   To the extent the Court considers Plaintiff's state law claims, they should be dismissed.

Dated: Melville, New York
        June 8, 2018

                                    Respectfully submitted,

                                    JACKSON LEWIS P.C.
                                    *ATTORNEYS FOR DEFENDANT*
                                    58 South Service Road, Suite 250
                                    Melville, New York 11747
                                    (631) 247-0404

                                    90 State House Square, 8th Fl.
                                    Hartford, Connecticut  06103
                                    (860) 522-0404


                        By:      */s/David R. Golder*_____
                                    NOEL P. TRIPP, ESQ.
                                    DAVID R. GOLDER, ESQ.

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2018, the enclosed MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND IN SUPPORT OF DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT was electronically filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, the Southern District's Local Rules, and the Southern District's Rules on Electronic Service, upon the following parties and participants:

JON L. NORINSBERG, ESQ.
BENNITTA L. JOSEPH, ESQ.
CHAYA M. GOURARIE, ESQ.
JOSEPH & NORINSBERG
*ATTORNEYS FOR PLAINTIFF*
225 Broadway, Ste. 2700
New York, New York  10007

*/s/Noel P. Tripp*
NOEL P. TRIPPP, ESQ.