**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X

MOLLY GREEN, on behalf of herself and all others
similarly situated,

                   Plaintiff,

        -against-                                   Civ. No.:  16-cv-07586 (AJN)

HUMANA AT HOME, INC, d/b/a SENIORBRIDGE
FAMILY COMPANIES, INC.

                   Defendant.

-----------------------------------------------------------------X

## DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR RULE 23 CERTIFICATION

NOEL P. TRIPP, ESQ.
DAVID R. GOLDER, ESQ.
**JACKSON LEWIS P.C.**
58 South Service Road, Suite 250
Melville, New York 11747
(631) 247-0404

90 State House Square, 8th Fl.
Hartford, Connecticut  06103
(860) 522-0404

*ATTORNEYS FOR DEFENDANT*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ..................................................................................................................... 2

   A.  Plaintiff's Work History ................................................................................................ 2

   B.  Relevant Employment Policies ..................................................................................... 3

   C.  Summary of Applicable Law ........................................................................................ 3

   D.  The Putative Class........................................................................................................ 6

ARGUMENT .......................................................................................................................... 6

   A.  Applicable Standard of Review ..................................................................................... 6

   B.  Plaintiff Fails To Submit Sufficient Evidence To Meet The High Rule 23 Burden .......... 7

   C.  The Putative Class is Overbroad Because it Includes HHAs with No Overtime Claims ... 9

   D.  Plaintiff Fails to Satisfy Rule 23 With Respect to the Overtime Class ........................... 13

      1.  Plaintiff is Not an Adequate Class Representative ..................................................... 14

      2.  Plaintiff Has Not Established Commonality or Typicality ......................................... 16

      3.  Plaintiff Has Not Established Predominance ............................................................. 18

   E.  Plaintiff Fails to Satisfy Rule 23 With Respect to the WTPA Class .............................. 21

CONCLUSION........................................................................................................................ 23

i

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                        **Page(s)**

*Am. Express v. Italian Colors Rest.*,
    570 U.S. 228 (2013) ................................................................................................................6

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ................................................................................................................7

*Andryeyeva v. New York Health Care, Inc.*,
    153 A.D.3d 1216 (2d Dep't 2017) .........................................................................................5

*Barenboim v. Starbucks Corp.*,
    21 N.Y.3d 460 (2013) ...........................................................................................................13

*Bell Atl. v. Twombly*,
    550 U.S. 544 (2007) ..............................................................................................................21

*Bonn-Wittingham v. Project O.H.R.*,
    2017 U.S. Dist. LEXIS 75286 (E.D.N.Y. May 17, 2017) .......................................................5

*Brown v. Kelly*,
    609 F.3d 467 (2d Cir. 2010) ...................................................................................................7

*Bustillos v. Acad Bus, LLC*,
    2014 U.S. Dist. LEXIS 3980 (S.D.N.Y. Jan. 13, 2014) ........................................................15

*De Carrasco v. Life Care Servs., Inc.*,
    2017 U.S. Dist. LEXIS 206682 (S.D.N.Y. Dec. 15, 2017) ............................................ *passim*

*DeJesus v. HF Mgmt. Servs., Inc.*,
    726 F.3d 85 (2d Cir. 2013) ...................................................................................................14

*Diaz v. Electronics Boutique of Am., Inc.*,
    2005 U.S. Dist. LEXIS 30382 (W.D.N.Y. Oct. 13, 2005) ......................................................9

*Downie v. Carelink, Inc.*,
    2018 U.S. Dist. LEXIS 125184 (S.D.N.Y. July 26, 2018) .....................................9, 19, 21, 22

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    574 F.3d 29 (2d Cir. 2009) .....................................................................................................8

*Flood v. Just Energy Mktg. Corp.*,
    No. 17-0546-cv, 2018 U.S. App. LEXIS 26629 (2d Cir. Sep. 19, 2018) ...............................11

*Gregory v. Stewarts Shops Corp.*,
    2016 U.S. Dist. LEXIS 89576 (N.D.N.Y. July 8, 2016) ........................................................22

*Griffith v. Fordham Fin. Mgmt.*,
  2015 U.S. Dist. LEXIS 30869 (S.D.N.Y. Mar. 12, 2015) ......................................................18

*Halliburton Co. v. Erica P. John Fund, Inc.*,
  134 S. Ct. 2398 (2014) ...........................................................................................................7

*Heredia v. Americare, Inc.*,
  2018 U.S. Dist. LEXIS 86918 (S.D.N.Y. May 23, 2018) ............................................... *passim*

*In re Initial Pub. Offering Sec. Litig.*,
  471 F.3d 24 (2d Cir. 2006) ......................................................................................................7

*In re Lloyd's Am. Trust Fund Litig.*,
  1998 U.S. Dist. LEXIS 1199 (S.D.N.Y. Feb. 4, 1998) ..........................................................15

*Lundy v. Catholic Health Sys. of Long Island, Inc.*,
  711 F.3d 106 (2d Cir. 2013) .............................................................................................14, 15

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010) ..................................................................................................18

*Nakahata v. New York-Presbyterian Healthcare Sys.*,
  723 F.3d 192 (2d Cir. 2013) ..................................................................................................14

*Ochei v. Marry Manning Walsh Nursing Home Co.*,
  2013 U.S. Dist. LEXIS 71498 (S.D.N.Y. May 17, 2013) ......................................................12

*In re Petrobras Sec. Litig.*,
  862 F.3d 250 (2d Cir. 2018) ..................................................................................................18

*Rodriguez v. Avondale Care Grp.*,
  2018 U.S. Dist. LEXIS 51578 (S.D.N.Y. Mar. 27, 2018) .......................................................4

*Romero v. H.B. Auto. Group, Inc.*,
  2012 U.S. Dist. LEXIS 61151 (S.D.N.Y. Mar. 1, 2012) .........................................................9

*Severin v. Project OHR, Inc.*,
  2012 U.S. Dist. LEXIS 85705 (S.D.N.Y. Jun. 20, 2012) ................................................13, 19

*Shillingford v. Astra Home Care, Inc.*,
  293 F. Supp. 3d 401, 418 ................................................................................................ *passim*

*Spann v. AOL Time Warner, Inc.*,
  219 F.R.D. 307 (S.D.N.Y. Dec. 24, 2003) ............................................................................16

*Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*,
  546 F.3d 196 (2d Cir. 2008) ....................................................................................................8

*Tokhtaman v. Human Care,*
    LLC, 149 A.D.3d 476 (1st Dep't 2017)..................................................................5

*Velasquez v. Digital Page, Inc.*,
    303 F.R.D. 435 (E.D.N.Y. Dec. 9, 2014)............................................................18

*Wal-Mart Stores, Inc. v. Dukes,*
    564 U.S. 338 (2011)..................................................................7, 8, 13, 21

*Wynn v. N.Y. City Hous. Auth.*,
    314 F.R.D. 122,128 (S.D.N.Y. Jan. 19, 2016).....................................................17

**Statutes**

Fair Labor Standards Act ..................................................................... *passim*

New York Labor Law Section 195 ..........................................................20

New York Wage Theft Prevention Act......................................................6, 20, 21, 22

**Other Authorities**

12 N.Y.C.R.R. § 142-2.1 ......................................................................4

12 N.Y.C.R.R. § 142-2.1(b)..................................................................4

12 N.Y.C.R.R. § 146-2.2 .....................................................................21

Counsel Opinion Letter, N.Y. Dep't of Labor, RO-09-00169......................................4

Counsel Opinion Letter, N.Y. Dep't of Labor, RO-00-58............................................6

Rule 23 ...................................................................................... *passim*

Defendant Humana at Home, Inc. d/b/a Seniorbridge Family Companies, Inc. ("Humana" or "Defendant") respectfully submits this memorandum of law in opposition to Plaintiff Molly Green's ("Plaintiff") motion for Rule 23 certification (Dkt. 48).

## PRELIMINARY STATEMENT

Plaintiff's motion ignores the fact that Rule 23 does not supply a mere pleading standard. Instead, the Supreme Court makes clear that Plaintiff must prove each of Rule 23's requirements by a preponderance of the evidence to obtain certification.  Indeed, Plaintiff's application for certification contains no evidence relating to the claims and experiences of other members of the putative class—opting instead to rely exclusively on the conclusory allegations in her own declaration.  This lack of evidence, alone, mandates denial of Plaintiff's motion.

In addition, discovery has established that Plaintiff is not an adequate representative of the putative class and that, even if she were, the claims of the putative class are not suitable for class-wide resolution.  Plaintiff worked for Humana for only six months, disavows knowledge of basic employment documents the company provided to her, and demonstrated a total lack of understanding about her compensation—which is central to this lawsuit.

Even if Plaintiff were an adequate representative, however, the claims she seeks to assert on a class-wide basis are much too individualized to justify certification.  Analysis of Plaintiff's unpaid overtime claim, for example, inevitably requires a determination of how many compensable hours Plaintiff worked—which Plaintiff admits vary from patient-to-patient and from day-to-day.  Resolution of this claim therefore requires a highly individualized inquiry into the meal and sleep habits of each individual HHA and their patient(s) that is not capable of generalized proof.

Plaintiff's claim under the New York Wage Theft Prevention Act ("WTPA") is largely redundant of her unpaid overtime claim and should not be certified for all the same reasons. Even analyzed on its own, however, this claim fails because Plaintiff has not offered sufficient evidence to meet Rule 23's requirements and because, like Plaintiff's overtime claim, it is not capable of generalized proof.

For all of these reasons, expounded upon below, Plaintiff's motion for Rule 23 certification should be denied in full.

## BACKGROUND

### A.      Plaintiff's Work History

Plaintiff worked for Humana for less than a year, from April 2015 through November 3, 2015. Dkt. 1 ¶¶ 18-19. During that time, she worked on "three different cases" as a Home Health Aide ("HHA"). *See* Green, 32:18.[1] The first was a non-live-in twelve-hour shift (from 8:00 am-8:00 pm), which Plaintiff worked for a couple of weeks. *Id.*, 32:24-33:5. The second case resulted from Plaintiff covering for another employee. She only worked that case for a couple of days, or a week at most. *Id.*, 33:20-21. The third case, a live-in caregiver case, is the only case that Plaintiff worked for an extended time. *Id.*, 34:1-10.

When Plaintiff worked non-live-in shifts, she earned an hourly rate of $10.00 per hour and was eligible for premium overtime (though she did not work any overtime). When Plaintiff worked live-in shifts, she earned a day rate of either $130 per day (during five-day workweeks) or $150 per day (during seven-day workweeks). Driscoll, 20:16, 104; Ex. C.

---

[1] Cited sections of Plaintiff's deposition are attached to the Affirmation of Noel P. Tripp In Support of Defendant's Opposition to Plaintiff's Motion For Rule 23 Certification ("Tripp Affirmation"), submitted herewith, as Exhibit A thereto, and cited as "Green, __:__." Cited sections of the 30(b)(6) deposition of Defendant are attached as Exhibit B to the Tripp Affirmation and cited as "Driscoll, __:__." All other Exhibits submitted with the Tripp Affirmation are cited as "Ex. __."

**B.      Relevant Employment Policies**

The employment policies most relevant to this lawsuit come from two sources, the Caregiver Employment Agreement ("CEA") and the employee handbook ("Handbook").  The CEA is clear that Live-In Caregivers will be paid a day rate.  *See* Ex. C, ¶ 1.  This method of payment presumes that Live-In HHAs will perform 8 hours of actual work, intermittently, during a 24-hour period.  *Id*., ¶¶ 1,3; Driscoll, 110:3-5.  The CEA recognizes, however, that "actual work hours are irregular and intermittent" and that "it may not be feasible to account for all hours actually on duty."  *Id.*  Thus, it reminds employees of their "responsibility to inform the Company if you are providing more than 8 hours of intermittent work per day during a live-in assignment."  *Id.*  This requirement protects both the HHA and the patient:  it helps ensure that HHAs are paid for all time actually worked, and it enables Humana to monitor changes with the patient and make adjustments if the patient starts to require near round-the-clock care.  *See* Driscoll, 97:9-12.

As for overtime, the Handbook is clear that all non-exempt employees "are eligible for overtime premium pay in compliance with applicable state and federal law."  Ex. D.  It also makes clear, however, that "[o]nly time worked counts towards overtime."  *Id.*

**C.      Summary of Applicable Law**

Plaintiff focuses exclusively on the evolution of federal law related to HHAs, and ignores applicable New York Law.[2]  This is problematic for several reasons, the most significant being that there are material differences between the two.[3]

---

[2] This Court is familiar with the history of the companionship exemption and related New York State law as a result of Humana's briefing on its motion to dismiss.  *See* Dkt. 14.  Thus, the entire history will not be rehashed here.

[3] As set forth in Defendant's pending motion for summary judgment, Humana proceeded in good faith in complying with the changes to the Fair Labor Standards Act ("FLSA") in this regard.  Dkt. 66.  Defendant's summary judgment motion should be granted, and the instant certification application dismissed without prejudice to its renewal in the appropriate state court.

First, New York has historically applied a "13-hour rule" regarding minimum wage, under which employers need only pay HHAs "for thirteen hours per twenty-four hour period" so long as "they are afforded at least eight hours for sleep…actually receive five hours of uninterrupted sleep," and are "afforded three hours for meals."  Ex. E (Counsel Opinion Letter, N.Y. Dep't of Labor, RO-09-00169 Live-In Companions (Mar. 11, 2010), available at http://labor.ny.gov/legal/counsel-opinion-letters.shtm (interpreting 12 N.Y.C.R.R. § 142-2.1)). This paradigm was put in place decades ago[4] to account for the fact that while FLSA-exempt companions were completely exempt from minimum wage *and* overtime, New York law exempted them only subject to the requirement that they receive minimum wage and "minimum wage overtime."  *Id*.  As long as HHAs receive the requisite sleep and meal periods, payment of at least New York minimum wage for those 13 hours therefore comports with the law.  *See id.*; *see also De Carrasco v. Life Care Servs., Inc.*, 2017 U.S. Dist. LEXIS 206682, at *23 (S.D.N.Y. Dec. 15, 2017) ("[A]n employee should only be paid twenty-four hours if she, in fact, is not receiving the appropriate meal and sleep breaks.").

Indeed, the New York State Department of Labor ("NYSDOL") recently clarified that the applicable regulations "shall *not* be construed to require that minimum wage be paid for meal period and sleep times…for a home care aide who works a shift of 24 hours of more."  12 N.Y.C.R.R. § 142-2.1(b) (emphasis added).  The "purpose and intent" of this clarifying regulation was to reaffirm New York's "longstanding and consistent interpretation that compensable hours worked under the State Minimum Wage Law do not include meal periods and sleep time of [HHAs] who work shifts of 24 hours or more."  *Rodriguez v. Avondale Care Grp.*, 2018 U.S. Dist. LEXIS 51578, at *13 (S.D.N.Y. Mar. 27, 2018) (citing 12 N.Y.C.R.R. § 142-2.1(b)).

---

[4] *See, e.g.*, Ex. E (NYSDOL Opinion Letter); Ex. F (NYSDOL Rulemaking statement).

This clarifying amendment was necessary because some New York State Appellate Courts have rejected NYSDOL's rationale reiterated in the Opinion Letter as irrational, and therefore have refused it deference.  *See Tokhtaman v. Human Care,* LLC, 149 A.D.3d 476 (1st Dep't 2017); *Andryeyeva v. New York Health Care, Inc.*, 153 A.D.3d 1216 (2d Dep't 2017).  The New York Court of Appeals has accepted the appellate division decisions for review, and will hear argument in February 2019.  Any subsequent decision will clarify New York Law on this issue.

In the meantime, the Appellate Division decisions do not bind this Court.  Indeed, every New York Federal Court to consider this issue to date has rejected those state court decisions— holding instead that DOL's interpretation of its own regulations is rational.  *See, e.g. De Carrasco*, 2017 U.S. Dist. LEXIS 206681, at *16 ("The Court here joins the other federal district courts that have considered the issue and rejects the *Tokhtaman* line of cases from the New York Appellate Division."); *Bonn-Wittingham v. Project O.H.R.*, 2017 U.S. Dist. LEXIS 75286, at *6 (E.D.N.Y. May 17, 2017).  This Court should do the same.

Second, New York law distinguishes between residential and non-residential employees for overtime purposes.  Non-residential employees are entitled to overtime after 40 hours per week; residential employees are only entitled to overtime after 44 hours.  *See Shillingford v. Astra Home Care, Inc.*, 293 F. Supp. 3d 401, 418 (citing 12 N.Y.C.R.R. § 142-2.2).

As discussed in additional detail below, application of this state law framework requires many individualized inquiries, including a deep dive into the sleep and meal habits of each HHA and each patient, as well as the employee's "residential" status.  *See Heredia v. Americare, Inc.*, 2018 U.S. Dist. LEXIS 86918, at *10 (S.D.N.Y. May 23, 2018) (denying Rule 23 class

certification in analogous HHA case).[5]  Class treatment of Plaintiff's claims alleging violation of those laws is therefore inappropriate.  *See id.*

## D.     The Putative Class

Plaintiff seeks Rule 23 certification of a putative class consisting of:

> All persons employed by Defendant to perform work as Home Health Aides between January 1, 2015 and November 12, 2015, who:  (1) worked in excess of forty hours per week without receiving time-and-a-half overtime compensation; and (2) who were not issued pay stubs/wage statements that accurately listed their overtime rate of pay for each hour worked over forty in a given workweek.

Dkt. 48, at 8.

This single proposed class definition contains two putative classes.  The first, encompassed by (1) above, is referred to throughout as the "Overtime Class."  The second, Wage Theft Prevention Act Class encompassed by (2), is referred to as the WTPA Class.

## ARGUMENT

## A.     Applicable Standard of Review

Rule 23 "imposes stringent requirements for certification that in practice exclude most claims."  *Am. Express v. Italian Colors Rest.*, 570 U.S. 228, 234 (2013).  Indeed, "[u]nlike the minimal burden imposed by the FLSA, Rule 23 requires a more searching inquiry, and Plaintiff bears a heavy burden to satisfy [a] 'rigorous analysis'" of each of Rule 23's requirements.[6] *Shillingford v. Astra Home Care, Inc.*, 293 F. Supp. 3d 401, 418 (S.D.N.Y. Feb. 23, 2018) (denying

---

[5] Plaintiff, for example, resided with her live-in patient for weeks at a time, conducting all life activities in the home. Green, 47:2-10.  The NYSDOL consistently counseled that "live-in aides" should be treated "the same as residential employees." *See* Ex. E.  Defendant urges that Plaintiff was a quintessential residential employee.  Her claim is thus not typical of an aide who worked only one or two 24-hour shifts in a week.

[6] The material difference between the standard for conditional certification under the FLSA and Rule 23 certification has manifested itself clearly in the case law relating to HHAs.  Indeed, at least three courts have *denied* Rule 23 certification of NYLL claims despite *granting* conditional certification of a collective under the FLSA. *See Heredia,* 2018 U.S. Dist. LEXIS 86918, at *13; *Shillingford*, 293 F. Supp. 3d at 418-19; *De Carrasco*, 2017 U.S. Dist. LEXIS 206682, at *28.

Rule 23 class certification in analogous HHA case) (quoting *Ruiz v. Citibank, N.A.*, 687 Fed. App'x 39, 40 (2d Cir. 2017)). "A district judge may not certify a class without making a ruling that each Rule 23 requirement is met." *In re Initial Pub. Offering Sec. Litig.*, 471 F.3d 24, 27 (2d Cir. 2006).

Rule 23(a) requires that Plaintiff establish each of the following: (1) the class is so numerous that joiner of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See* FED. R. CIV. P. 23(a); *see also Brown v. Kelly*, 609 F.3d 467, 475 (2d Cir. 2010). Plaintiff must also establish that the case qualifies under at least one of the categories set forth by Rule 23(b). Here, Plaintiff seeks to proceed under Rule 23(b)(3), which permits certification only "if the questions of law or fact common to class members predominate over any questions affecting individual members, and…class litigation is superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R. CIV. P. 23(b)(3). This test resembles, but is "far more demanding" than the commonality and typicality requirements of Rule 23(a). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). It is met only "if the plaintiff can establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, predominate over those issues that are subject only to individualized proof." *Brown*, 609 F.3d at 483.

**B.**     **Plaintiff Fails To Submit Sufficient *Evidence* To Meet The High Rule 23 Burden**

"Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Thus, to obtain certification, Plaintiff must "*prove*—not simply plead— that their proposed class satisfies each requirement of Federal Rule of Civil Procedure 23." *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2403 (2014) (emphasis in original).

To do so, Plaintiff must establish each Rule 23 requirement by a "preponderance of the evidence." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009); *see also Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 202 (2d Cir. 2008) ("Today, we dispel any remaining confusion and hold that the preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements.").

Plaintiff fails to meet this burden here.  Indeed, Plaintiff offers scant evidence, consisting solely of her own declaration, to support her motion for certification.  Rule 23 demands much more.  *See Dukes*, 338 U.S. at 350.  The sum and substance of Plaintiff's evidence of common policies is her statement that she "believes" other home health aides were given similar new hire documentation[7] and she "spoke to other home health aide workers and they too complained about working consecutive twenty-four hour shifts without being *adequately compensated*."  Dkt. 50, ¶¶ 3, 10 (emphasis added).[8]  These statements are not sufficient evidence to support the class Plaintiff proposes: they are no evidence at all.  Indeed, courts in this District have recently denied certification in analogous HHA cases where the only evidence offered by plaintiffs were their own conclusory affidavits.  *See, e.g. Heredia*, 2018 U.S. Dist. LEXIS 86918, at *13 (citing *Shillingford*, 293 F. Supp. 3d at 412).

This lack of evidence distinguishes this case from others granting Rule 23 certification (in whole or in part) because those courts did so on much stronger evidence.  In *De Carrasco*, for example, an unpaid overtime class was certified based not just on Plaintiff's declaration, but the declaration of a second individual corroborating Plaintiff's testimony and on both individuals'

---

[7] Incredibly, at deposition, Plaintiff contradicted this statement in her Declaration and disavowed having signed the CEA.  *Compare* Dkt. 50 ¶ 3 ("I was asked to sign a standard Caregiver Employment Agreement") *with* Green 83:3-25.

[8] Plaintiff's Declaration does not in any way connect this statement to a failure to pay overtime.

paystubs reflecting payment of an incorrect overtime rate.  *See* 2017 U.S. Dist. LEXIS 106682, at *18.  *Downie v. Carelink, Inc.*, the only other decision granting Rule 23 certification to an unpaid overtime class, is likewise distinguishable.  In that case, "Defendants d[id] not dispute Plaintiff's contentions as to commonality and typicality," and "Defendants [did] not contest predominance and superiority."  2018 U.S. Dist. LEXIS 125184, at **15-19.  Here, by contrast, Humana strongly contests all three of those elements.

## C.    The Putative Class is Overbroad Because it Includes HHAs with No Overtime Claims

In analogous HHA cases, courts deny Rule 23 class certification where, like here, the putative class includes both Live-Ins (who were classified as exempt) and Non-Live-Ins (who were always classified as non-exempt).  *See Shillingford*, 293 F. Supp. 3d at 410 (denying Rule 23 class certification, noting that "[w]hile Plaintiff spent the majority of her time working [] live-in 24-hour shifts, it is clear that there are aides who did not work live-in shifts at all or for whom these shifts were a small portion of their working time.").  In *Shillingford*, for example, the court concluded that plaintiff failed to show that "she is similarly situated to aides who did not also spend the majority of their time in live-in shifts . . . " *Id.*, at 411, 418-19 (limiting FLSA conditional certification "to aides who worked live-in shifts during 50% or more of the weeks" and denying Rule 23 certification in full).  In addition to the court in *Shillingford*, other courts within this circuit have routinely rejected attempts to certify overbroad classes containing both exempt and non-exempt employees.  *See, e.g., Romero v. H.B. Auto. Group, Inc.*, 2012 U.S. Dist. LEXIS 61151, at *30-*37 (S.D.N.Y. Mar. 1, 2012); *Diaz v. Electronics Boutique of Am., Inc.*, 2005 U.S. Dist. LEXIS 30382, at *11-*19 (W.D.N.Y. Oct. 13, 2005).

Similar to the company in *Shillingford*, Humana employed two very different categories of HHAs:  Live-Ins and Non-Live-Ins.  Live-Ins, as suggested by their name, reside in the patient's

residence while providing care; Non-Live-Ins do not.  Live-Ins are present in a client's residence 24-hours a day, but are expected to provide only 8 hours of intermittent care, as needed.  Ex. C ¶ 3.  As described by the CEA, they are expected to take three hours for meals, 8 hours for sleep, and 5 hours for free time during each 24-hour period.  *Id*.  Even though they are paid a day rate, they are not expected to provide constant care (or even stay awake) for the entire period.  *Id*.; Driscoll Dep. 95:6-96:9.

Non-Live-Ins, by contrast, provide constant care and supervision throughout their shift (typically 12 hours).  *See id*.  Sleeping during a Non-Live-In shift is strictly prohibited.  *See* Driscoll Dep. 95:6-96:9.  Because Non-Live-Ins actually work during all hours of their shift, they are paid for each of those hours.  Non-Live-Ins at all times received regular rate overtime for hours in excess of 40; in other words, they were not classified as exempt companions (though they met the definition under the prior regulations).  *See* Declaration of Mark Naghsh ("Nghsh Dec."), submitted together herewith, ¶ 2, Ex. 1.

In short, Humana only classified Live-Ins as exempt from overtime (under the companionship exemption, before its elimination).  Non-Live-Ins, by contrast, have never been classified as exempt, and were therefore paid overtime for all reported hours over 40 in any given workweek.  This is not a distinction without difference.  Any unpaid overtime claim asserted by Live-Ins (who were treated as exempt during the class period) amounts to a misclassification claim.  Any unpaid overtime claim asserted by Non-Live-Ins (who were non-exempt) would be an "off-the-clock" claim.

Because of the foregoing, Plaintiff's inclusion of both Live-In and Non-Live-In HHAs within the same putative class renders that class overbroad.  Plaintiff's motion for Rule 23 certification should be denied for this reason alone.

In addition to the material differences relating to compensation and expectations described above, an entirely different set of laws applies to one group but not the other.  Live-Ins, exclusively, are subject to the "13-hour rule" for minimum wage described above, laid out by the NYSDOL in a series of letters.  Moreover, because Live-Ins are treated as residential employees, they are not entitled to overtime under New York law until they have worked at least 44 hours (as opposed to the usual 40) in a given workweek.  *See Shillingford*, 293 F. Supp. 3d at 418 (citing 12 N.Y.C.R.R. § 142-2.2).

Notably, NYSDOL already investigated Humana for the same alleged overtime violations at issue in this case.  Specifically, NYSDOL conducted an investigation of Senior Bridge Family Companies (NY) Inc. for the period of June 20, 2013 through June 20, 2016.  *See* Ex. G (NYSDOL Assessment Dated November 7, 2016.)  In issuing its findings, the NYSDOL ruled, in relevant part:

> **Effective October 13, 2015, Federal Regulations no longer exempt home health aides from overtime and mandates that these aides be paid overtime at time and a half of their regular or agreed rates; New York State Department of Labor conforms to Federal Regulations in this area, as a result, home health aides must be paid overtime at 1.5 times of their regular rate of pay for overtime hours worked.**

*Id*. (emphasis in original).

This determination arguably results in collateral estoppel of the New York State law claims.  For issue preclusion or collateral estoppel to apply "(1) the issues in both proceedings must be identical, (2) the issue in the prior proceeding must have been actually litigated and actually decided, (3) there must have been a full and fair opportunity for litigation in the prior proceeding, and (4) the issue previously litigated must have been necessary to support a valid and final judgment on the merits."  *Flood v. Just Energy Mktg. Corp.*, No. 17-0546-cv, 2018 U.S. App. LEXIS 26629, at *34-35 (2d Cir. Sep. 19, 2018) (internal citations and quotation marks omitted).

Here, the doctrines of issue preclusion and collateral estoppel foreclose Plaintiffs from bringing the New York claims against Defendants, because the same claims were already decided when NYSDOL determined that the effective date of the Final Rule was October 13, 2015 for purposes of New York state law.[9]

First, there can be no dispute that the issue before the NYSDOL and the issues in this case are identical – alleged violations of the applicable overtime laws under the Federal Regulations and New York state law based on the proceedings surrounding the Final Rule.  Second, the issue in the NYSDOL audit was litigated and decided.  The NYSDOL decided that effective October 13, 2015, Federal Regulations no longer exempt home health aides from overtime for purposes of New York state law.  "Under the NYLL, an order by the Commissioner of Labor that an employer has violated Article 6 (on payment of wages) or Article 19 (on the minimum wage act), made pursuant to an employee's complaint . . ., 'shall be final and not subject to review by any court or agency' unless a party in interest petitions the industrial board of appeals for review within sixty days after the issuance of the order." *Ochei v. Marry Manning Walsh Nursing Home Co.*, 2013 U.S. Dist. LEXIS 71498, at *19-20 (S.D.N.Y. May 17, 2013) (*citing* NYLL §§ 218(1)-(2), 101(1)).  Third, there was a full and fair opportunity for both parties to litigate the issue.  Both Defendants and the New York putative class members had the opportunity to appeal the NYSDOL's determination.  Fourth, there can be no dispute that the issue previously litigated at the NYSDOL— whether the HHWs were exempt under New York law and when—was necessary to support a valid and final judgment by the NYSDOL on the merits of that administrative finding.

---

[9] Defendants acknowledge that this Court previously held that the effective date of the regulation at issue was January 1, 2015 in the context of Plaintiff's FLSA claim.  The instant motion, however, involves only New York state law claims.  The New York State Department of Labor's position on the effective date of the regulations is entitled to greater deference in this context.  This Court does not have to reach this issue, however, because as demonstrated Plaintiff failed to satisfy the Rule 23 elements of adequacy, commonality, typicality, and predominance by a preponderance of the evidence, regardless of the applicable effective date.

Consequently, Plaintiffs' New York class fails because the doctrines of issue preclusion and collateral estoppel foreclose Plaintiffs from bringing the same claims already decided with respect to Defendants.

At a minimum, the Court should defer to NYSDOL on this issue because the DOL's interpretation of a statute it is charged with enforcing is entitled to deference. *See* Ex. H. It is well-settled law in New York that "[t]he [DOL's] interpretation of a statute it is charged with enforcing is entitled to deference. The construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld." *Severin v. Project OHR, Inc.,* 2012 WL 2357410, at \*8 (S.D.N.Y. June 20, 2012) (citing *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70, 79, 854 N.Y.S.2d 83, 883 N.E.2d 990 (N.Y.2008) (citation omitted)); *Barenboim v. Starbucks Corp.*, 2013 NY Slip Op 4754, 21 N.Y.3d 460, 972 N.Y.S.2d 191, 995 N.E.2d 153 (2013).

Thus, the putative class is also temporally overbroad in light of the New York State Department of Labor's conclusion that the effective date of the companionship exemption's modification, for the purposes of application of the NYLL to HHAs, was October 13, 2015. Ex. G.

### D.    Plaintiff Fails to Satisfy Rule 23 With Respect to the Overtime Class

Plaintiff's motion should be denied for the additional reason that she has failed to meet her burden of establishing each of Rule 23's requirements by a preponderance of the evidence. Failure to establish any one of Rule 23's elements mandates that certification be denied. Here, Plaintiff fails on four separate elements.

First, Plaintiff is not an adequate representative to assert any unpaid overtime claim because her admissions render her claim subject to individualized defenses and because she lacks

sufficient knowledge about the experience of other putative class members.   Further, Plaintiff cannot establish commonality, typicality, or predominance because she fails to establish that her experience paralleled that of other class members or is capable of generalized proof.   To the contrary, the record reveals that analysis of Plaintiff's overtime claim requires individualized inquiries into the unique experiences of each HHA with each patient and is therefore not suitable for class-wide resolution.

1.   Plaintiff is Not an Adequate Class Representative

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class."  FED. R. CIV. P. 23(a)(4).  When analyzing this element, courts may consider "whether a putative representative is familiar with the action, whether he has abdicated control of the litigation to class counsel, and whether he is of sufficient moral character to represent a class." *Id.* (quoting *Niemiec v. Ann Bendnick Realty*, 2007 U.S. Dist. LEXIS 97531 (E.D.N.Y. Apr. 23, 2007)).   "Finally, a proposed class representative may not satisfy the adequacy prong if his or her case involves problems that 'could become the focus of cross-examination and unique defenses at trial, to the detriment of the class.'"  *Id.* (quoting *In re NYSE Specialists Sec. Litig.*, 240 F.R.D. at 144).

Plaintiff here fails to meet these requirements for two reasons:  (1) Plaintiff's admissions render her claims subject to at least one unique defense detrimental to the class, and (2) Plaintiff lacks sufficient knowledge to enable her to protect the interests of the putative class adequately. First, Plaintiff has conceded that she cannot even estimate the number of hours of care she provided on any given day.  *See* Green, 150:3-17.  This admission subjects Plaintiff's overtime claim to a potential defense that will overwhelm any issues capable of generalized, class-wide proof.  Second Circuit case law requires that overtime claims be plead with some degree of specificity.  *See*

14

*DeJesus v. HF Mgmt. Servs., Inc.*, 726 F.3d 85 (2d Cir. 2013); *Nakahata v. New York-Presbyterian Healthcare Sys.*, 723 F.3d 192 (2d Cir. 2013). At a bare minimum, "a plaintiff must sufficiently allege 40 hours of work in a given workweek as well as some uncompensated time in excess of 40 hours." *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013). While the courts in this Circuit do not require plaintiffs "to keep careful records and plead their hours with mathematical precision," they do require plaintiffs to draw on the "memory and experience that lead them to claim in federal court that they have been denied overtime . . . in the first place." *Id.* Plaintiff's failure to identify a specific workweek in which she worked over 40 hours, coupled with her admission that she cannot even estimate how many hours she worked, demonstrates that she cannot satisfy this requirement. *See Bustillos v. Acad Bus, LLC,* 2014 U.S. Dist. LEXIS 3980 (S.D.N.Y. Jan. 13, 2014) (Plaintiff's allegation that he "regularly" worked over 40 hours per week was insufficient). Plaintiff may argue in reply that she necessarily worked overtime, given the number of live-in shifts she worked per week. Yet, Senior Judge Pauley squarely rejected this same argument in *Heredia* because "the number of overtime hours each HHA worked still turns on the number of compensable hours in a 24-hour shift." 2018 U.S. Dist. LEXIS 86918, at *12.

Second, Plaintiff lacks sufficient knowledge to enable her to protect the interests of the putative class adequately. *See In re Lloyd's Am. Trust Fund Litig.*, 1998 U.S. Dist. LEXIS 1199, at **32-35 (S.D.N.Y. Feb. 4, 1998). Plaintiff has shown a total lack of understanding about her compensation during her time as a Live-In. *See generally* Green Dep., 144:18-146:6. At first, in response to questioning by defense counsel, Plaintiff testified that she was an hourly employee and received her hourly rate for 13 hours per 24-hour period. (*See id.*; *see also id.* at 85:20-86:14).

This is incorrect.  During the relevant timeframe, Humana paid Plaintiff at a day-rate of $130 per day for five-day workweeks and $150 per day for seven-day workweeks.  *See* Driscoll, 109:15-16.

Plaintiff's counsel sought to address this issue by asking follow up questions at Plaintiff's deposition, but those questions did not have the desired effect, as reflected by the exchange below:

> Q:      …As you sit here today, not what you were supposed to make, but do you know what you were actually paid?
>
> A:      I don't know what—they were paying me—but I don't know actually what they were—no, because my pay rate was inconsistent—they supposed to pay me $10 an hour.  Then they say $150 for seven days.  I don't know what they were—*I don't know what they were paying me*.

Green, 154:13-21 (emphasis added).

Given the foregoing, Plaintiff is not an adequate representative of the putative Overtime Class.  Plaintiff's motion to certify that class should be denied for this added reason.

2.   Plaintiff Has Not Established Commonality or Typicality

Plaintiff also fails to establish that her claims are common with and typical of those of the putative class.  Commonality "requires the plaintiff to demonstrate that the class members 'have suffered the same injury.'"  *Dukes*, 131 S. Ct. at 2551 (quoting *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 (1982)).  Importantly, "[t]his does not mean merely that they have all suffered a violation of the same provision of law."  *Id.*  "What matters to class certification is not the raising of common questions—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive resolution of the litigation."  *Id.*, at 2551, n. 6.  Thus, for commonality to exist, Plaintiffs' "claims must depend upon a common contention…of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Id.* at 2551.  Similarly, typicality requires that the Plaintiff's claim "arises from the same course of

16

events, and each class member makes similar legal arguments to prove the defendant's liability."

*Spann v. AOL Time Warner, Inc.*, 219 F.R.D. 307, 316 (S.D.N.Y. Dec. 24, 2003) (quoting

*Robinson v. Metro-North Commuter R.R. Co.*, 267 F.3d 147, 155 (2d Cir. 2001)).

Plaintiff cannot establish either of these elements here because the experience of each HHA

varied from day-to-day depending on the needs of the patient—a fact which Plaintiff admits.  For

example, Plaintiff contends that she had a challenging patient, stating "you don't have time to take

any breaks with her."[10]  Green Dep., 48:3-5.  Plaintiff's patient also woke up about three times per

night on most nights (but Plaintiff acknowledges that she slept through the night "sometimes.").

*See id.*, 50:15-23:23.

Plaintiff, however, offers no evidence to support the notion that other HHAs had similar

experiences.  Indeed, Plaintiff has not submitted a declaration from any other putative class

member[11], nor any other evidence at all on this issue.  In fact, Plaintiff acknowledges that no two

cases are the same.  *See* Green, 129:16-25; 132:9-12.  As Plaintiff herself explained during her

deposition, each patient has "different needs," so "[e]very case is different.  I never find a case the

same."  *Id.*, 129:16-25.

Plaintiff even conceded that no two days are the same, even when spent with the same

patient.  When asked about how many hours she worked in a given day, for example, Plaintiff

explained:  "It all depend[s] on the patient's need for the day.  Sometimes the patient will be up

and not giving a lot of trouble and the next time the patient will be giving trouble.  So it varies.  Its

[sic] not going to be consistent."  *See id.*, 149:10-150:1; 53:11-25 (amount of time that patient

---

[10] Despite this contention, Plaintiff admits that she did not spend all her time with this patient "working," and concedes that she would sometimes talk on the phone, browse the internet, or play games while at the patient's house.  *See* Green, 42-45.  Plaintiff's admission demonstrates that when HHAs were "working" and when they were engaged in personal, non-working time varies from person to person, from case to case, and even from day to day.

[11] Even if Plaintiff had submitted such a declaration, it would fail to cure this deficiency in light of the Plaintiff's admission that "[e]very case is different."  Green, 129:16-25.

spent awake after getting up varied); 54:1-20 (amount of times patient woke up during any given night varied); 80:14-15 ("Some live-in shifts you can sleep but others you can't").

Given these admissions, Plaintiff has not established the elements of commonality or typicality. To the contrary, these elements are not satisfied here. Thus, the Overtime Class should not be certified. *See Wynn v. N.Y. City Hous. Auth.*, 314 F.R.D. 122,128 (S.D.N.Y. Jan. 19, 2016) (typicality not satisfied where members of putative class performed different job duties); *Griffith v. Fordham Fin. Mgmt.*, 2015 U.S. Dist. LEXIS 30869, at *9 (S.D.N.Y. Mar. 12, 2015) (commonality did not exist where plaintiffs' work schedules required an "individualized inquiry to determine the hours that Potential Class Members work[ed]"); *Velasquez v. Digital Page, Inc.*, 303 F.R.D. 435, 442 (E.D.N.Y. Dec. 9, 2014) (issue of whether each individual plaintiff was entitled to overtime was "not a common question, nor are there common answers.").

3. <u>Plaintiff Has Not Established Predominance</u>

"The predominance inquiry is a core feature of the Rule 23(b)(3) class mechanism." *In re Petrobras Sec. Litig.*, 862 F.3d 250, 270 (2d Cir. 2018). It is necessary because "[w]here individualized questions permeate the litigation, those 'fatal dissimilarit[ies]' among putative class members 'make use of the class-action device inefficient or unfair.'" *Id.* (quoting *Amchem Prods.*, 521 U.S. at 623-24). It is satisfied only "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial that the issues subject only to individual proof." *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010). Predominance "is *not* satisfied simply by showing that the class claims are framed by the common harm suffered by potential plaintiffs." *In re Petrobras*, 862 F.3d at 270 (emphasis added). The Supreme Court recently "emphasized district courts' 'duty to take a 'close look' at whether common questions predominate

over individual ones'" before granting Rule 23 certification.  *Id.*, at 270-71 (quoting *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)).

Plaintiff claims that she "worked 24 hours every day," but only received compensation for 13 hours.  (Green Dep. 146:17-147:1).  Under New York Law (the "13-hour rule"), however, Humana did not have to pay Plaintiff for all 24 hours as long as she received the requisite sleep and meal breaks—it needed only pay Plaintiff for hours she actually worked.  *See e.g., Rodriguez de Carrasco*, 2017 U.S. Dist. LEXIS 206682, at *23 (S.D.N.Y. Dec. 15, 2017) ("[A]n employee should only be paid twenty-four hours if she, in fact, is not receiving the appropriate sleep and meal breaks.").  Analysis of this claim therefore necessarily entails an inquiry into how many hours Plaintiff actually worked (*i.e.*, how much of the time she spent at a patient's house was compensable).  *See id.*  This individualized inquiry is in addition to the threshold inquiry of whether each particular shift was a Live-In or Non-Live-In shift.  As described above, Humana only availed itself of the "13-hour rule" – in that it considered part of a shift to be non-work time – for Live-In shifts, consistent with NYSDOL guidance.  Non-Live-Ins were paid for all hours worked, including overtime at a rate of time and a half for all hours over 40 in a given workweek.

In closely analogous cases, federal courts in this Circuit have repeatedly recognized the individualized nature of this inquiry and therefore have held that class certification is not appropriate.  *See, e.g., Severin v. Project OHR, Inc.*, 2012 U.S. Dist. LEXIS 85705, at **33-34 (S.D.N.Y. Jun. 20, 2012) (predominance not satisfied because of individualized nature of inquiry into meal and sleep habits); *Shillingford*, 293 F. Supp. 3d. at 417-18 (same); *Rodriguez de Carrasco*, 2017 U.S. Dist. LEXIS 206682, at *23 (same); *Downie v. Carelink, Inc.*, 2018 U.S. Dist. LEXIS 125184, at *24 (S.D.N.Y. July 26, 2018) ("Because an aide must be paid for the full

19

24 hours only if she does not receive appropriate meal and sleep breaks, 'individualized and not common questions predominate,' and 'class action is not the superior method of adjudication.'").

This issue goes directly to liability—not just damages, as Plaintiff contends—because Plaintiff is only entitled to overtime if she worked at least 44 hours in a given workweek, which of course depends on how many hours she spent at a patient's home were compensable.[12]  As Senior Judge Pauley recently explained in an analogous case:

> Whether a 24-hour shift consists of 13 hours or 24 hours is integral to whether [Defendant] properly paid the overtime rate and minimum wage. And that analysis turns on whether an employee received eight hours of sleep per night (as long as five of those hours were uninterrupted) and three hours of meal breaks.  This requires a tailored review of each Plaintiff's meal breaks and hours slept, varying down to the particular shift.  For instance, an HHA may have been paid the proper minimum wage for four 24-hour shifts if each shift counted as 13 hours, but her pay would fall well below minimum wage if that shift were counted as 24-hours.  That determination requires an analysis of the breaks the employee took during each shift.  Plaintiffs cannot ignore the need for these individualized assessments.

*Heredia v. Americare, Inc.*, 2018 U.S. Dist. LEXIS 86918, at **10-11 (S.D.N.Y. May 23, 2018) (citations omitted).

Because of the foregoing, analysis of Plaintiff's overtime claim necessarily requires analysis of whether she worked enough hours in any given week to be eligible for overtime.  This, in turn, inevitably requires analysis of how much time spent at the patient's house was compensable.  As described above, that analysis is highly individualized and not capable of generalized proof.  Class litigation is thus not a superior method of adjudicating Plaintiff's overtime claim.  Plaintiff's motion to certify the Overtime Class should therefore be denied.

---

[12] Alternatively, over 40 hours if a Live-In HHA is deemed a "non-residential" employee.

**E.      Plaintiff Fails to Satisfy Rule 23 With Respect to the WTPA Class**

Plaintiff cannot meet the commonality or typicality requirements of Rule 23(a)(1), much less the more stringent predominance requirement of Rule 23(b)(3), with respect to the WTPA Class because analysis of this claim inevitably requires individualized inquiries.  Plaintiff does not allege that Humana failed to provide the notice required by Section 195 of the New York Labor Law.  Instead, Plaintiff claims that "because [Humana] improperly classified Plaintiff and class members as 'exempt' after January 1, 2015," this "necessarily means that Defendant's wage notices were inaccurate and misleading, since these notices did not contain any mention of statutory overtime wage rates mandated by New York law."  *See* Dkt. 48, at 17.[13]  Similar claims have been made in analogous cases, and have been swiftly rejected each time.  *See, e.g., Downie*, 2018 U.S. Dist. LEXIS 125184, at **26-28 (denying a motion to certify a class of home health workers asserting a WTPA claim); *Heredia*, 2018 U.S. Dist. LEXIS 86918, at **12-13 (same); *Shillingford*, 293 F. Supp. 3d at 412 (same); *De Carrasco*, 2017 U.S. Dist. LEXIS 206682, at **26-28 (same).

Essentially, this is an allegation (without adequate proof) that Plaintiff and other HHAs were subjected to similar violations of the law.  The Supreme Court specifically rejected this type of claim as insufficient to establish commonality in *Dukes*.  *See* 564 U.S. at 350 ("Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury . . . [t]his does not mean merely that they have all suffered a violation of the same provision of law.")

---

[13] Plaintiff's application is not even clear as to whether it relates to the WTPA's notice requirement, its wage statement requirement, or both.  *Compare* Dkt. 48 at 17 ("wage notices") *with* Dkt. 48 at 7-8 (questioning wage notices and citing to WTPA provision relating to wage statements).  NYLL Sections 195(1) and 193(3) each authorize claims for improper wage notices or statements, but each type of claim is legally and analytically distinct.  Plaintiff fails to allege sufficient facts to support any such claim.  *See generally Bell Atl. v. Twombly*, 550 U.S. 544, 570 (2007) (a sufficiently pled complaint must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation.")

(citations and quotations omitted).  In short, *Dukes* precludes certification of the type of class proposed here.

Moreover, the existence of individualized defenses in response to each employees' WTPA claim ensures that individual issues will predominate.  Plaintiff does not dispute that HHAs typically received a WTPA notice, along with the CEA, setting forth precisely how each was to be paid, and including all applicable rates.[14]  *See* Ex. C.; *see also* Naghsh Dec., ¶ 2, Ex. 1.  In other words, Plaintiff has made no showing of a violation.   Further, Humana potentially has complete defenses to any purported technical flaws cited by Plaintiff with respect to its WTPA notices— namely, that Humana "made complete and timely payment of all wages due" to the individual employees in question and/or "reasonably  believed  in good faith" that the documentation it provided was sufficient.  *See* NYLL § 198(1-b); Naghsh Dec., ¶ 2, Ex. 1.  This is especially so for Non-Live-In HHA's who, as discussed above, have always been classified as non-exempt and were paid overtime.

A proper analysis of this defense requires a series of individualized inquiries for each putative class member, which is fatal to this putative class.  This is especially so given the overlap between this claim and the claim asserts by the Overtime Class, which, as discussed above, also is not amendable to class-wide resolution.  *See Downie,* 2018 U.S. Dist. LEXIS 125184, at **26-28 ("Because the premise of [Plaintiff's] argument [regarding payment for all 24-hours] has already been rejected, certification is denied on this claim as well."); *Gregory v. Stewarts Shops Corp.*, 2016 U.S. Dist. LEXIS 89576, at **94-99 (N.D.N.Y. July 8, 2016) ("[R]esolution of the affirmative defense to plaintiffs' wage notification claim will implicate the same concerns about individualized proof that precluded class certification of plaintiffs'" other NYLL claims); *see also*

---

[14] Plaintiff also received wage statements.  *See* Dkt. 50-1.

*Heredia*, 2018 U.S. Dist. LEXIS 86918, at \*\*12-13; *Shillingford*, 293 F. Supp. 3d at 412; *De Carrasco*, 2017 U.S. Dist. LEXIS 206682, at \*\*26-28.  Certification of the WTPA Class is not warranted for this added reason.

In light of the foregoing, Plaintiff's motion to certify the WTPA Class should be denied.

## CONCLUSION

In short, Plaintiff has failed to provide sufficient evidence to meet her burden demonstrating entitlement to Rule 23 certification.  Humana, by contrast, has provided evidence demonstrating that Plaintiff is not an adequate representative of the putative class and that, even if she were, the claims she seeks to assert on behalf of the putative class require individualized inquiries that are not suitable for class-wide resolution.  As a result, Plaintiff's motion for Rule 23 certification should be denied in full.


Dated: Melville, New York
        January 4, 2018

                                Respectfully submitted,

                                JACKSON LEWIS P.C.
                                *ATTORNEYS FOR DEFENDANT*
                                58 South Service Rd., Ste. 250
                                Melville, New York  11747
                                (631) 247-0404
                                Trippn@jacksonlewis.com


                    By:     */s/ Noel P. Tripp, Esq.*
                                NOEL P. TRIPP, ESQ.
                                DAVID R. GOLDER, ESQ.