UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MAR 3 0 2019

---

Molly Green,

          Plaintiff,

    —v—

Humana At Home, Inc.,

          Defendant.

---

16 Civ. 7586 (AJN)

OPINION & ORDER

ALISON J. NATHAN, District Judge:

This action concerns Defendant Humana at Home, Inc.'s ("Humana") alleged violations of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") with respect to overtime payments and wage statements owed to its home health aide employees. Plaintiff Molly Green has moved to certify a class action under Federal Rule of Civil Procedure 23(b)(3) for Humana's alleged overtime and wage notice violations under the NYLL. Dkt. No. 47. In light of events in a parallel proceeding, Green's motion is administratively denied with leave to refile.

Also pending before the Court are the parties' cross-motions for summary judgment. Dkt. Nos. 53; 65. For the reasons that follow, Humana's motion for summary judgment is DENIED and Green's motion for summary judgment is GRANTED in part.

## I.    Background on Class Certification

The Court begins by addressing background matters pertinent to the class certification motion and resolving that motion before turning to the pending motions for summary judgment.

## A.    Regulatory Background

This action concerns the Department of Labor's ("DOL") decision to remove a longstanding FLSA exemption for third-party agencies employing home health care workers. This new regulation, adopted in 2013 and assigned an effective date of January 1, 2015, provided that such agencies were no longer exempt from the FLSA's overtime and minimum wage provisions. *See* Application of the Fair Labor Standards Act to Domestic Service, 78 Fed. Reg. 60,454 (Oct. 1, 2013) (codified at 29 C.F.R. Pt. 552) (the "third-party employer rule" or "home care rule"). On December 22, 2014, the District Court for the District of Columbia declared this rule invalid. *See Home Care Ass'n of Am. v. Weil (Weil I)*, 76 F. Supp. 3d 138, 139–40 (D.D.C. 2014), *rev'd*, 799 F.3d 1084 (D.C. Cir. 2015) (*Weil II*). The DOL appealed this decision and on August 21, 2015, the Court of Appeals for the District of Columbia reversed the district court and held that the rule was valid. *Weil II*, 799 F.3d at 1087. The mandate issued in that opinion on October 12, 2015. Pursuant to policy statements issued both in the fall of 2014 and after each development in the *Weil* litigation, the DOL informed employers that it would not enforce the regulation until November 12, 2015. *See, e.g.*, Dkt. No. 56-1, Application of the Fair Labor Standards Act to Domestic Service; Announcement of Time-Limited Non-Enforcement Policy, 79 Fed. Reg. 60,974 (Oct. 9, 2014) (codified at 29 C.F.R. Pt. 552) ("Oct. 2014 Policy").

Many civil actions arose out of the third-party employer rule and the *Weil* litigation, including two at issue here: the action presently pending before this Court, *Green v. Humana at Home*; and an action filed in Connecticut, *Kinkead v. Humana, Inc.*, No. 3:15-CV-1637 (JAM) (D. Conn.). In slightly different configurations, both of these actions allege overtime claims against Humana as of the effective date of the third-party employer rule.

## B.   *Green v. Humana at Home*

Green filed this action on September 28, 2016 alleging that she was entitled to overtime payments under the FLSA and the NYLL and corresponding wage statements and spread-of-hours payments under the NYLL over the period from January 1, 2015 through November 12, 2015 as a result of the third-party employer rule.  Dkt. No. 1.  Under the logic that New York overtime requirements are generally "subject to the exemptions" of the FLSA, *see Gold v. New York Life Ins. Co.*, 730 F.3d 137, 145 (2d Cir. 2013), her action asserted overtime claims under both the FLSA and the NYLL arising out of the same rule change and over the same period. Green initially sought to bring these claims on behalf of herself, a FLSA collective, and a Rule 23(b)(3) class.

On December 2, 2016, Humana moved to dismiss Green's complaint on the grounds that the third-party employer rule did not go into effect until the date on which the DOL began enforcing the rule (November 12, 2015) or, in the alternative, the date on which the D.C. Circuit's mandate issued (October 12, 2015). *See* Dkt. No. 14 at 7–14.  Applying "the general rule that all civil judicial decisions apply retroactively," the Court denied Humana's motion and held that the third-party employer rule should be treated as effective beginning on January 1, 2015, and therefore held that Green had stated a plausible claim for relief.  Dkt. No. 32 at 7, 19, 23.

On April 20, 2018, Green filed a motion to certify a Rule 23(b)(3) class of Humana home health aides based on two of her class claims: (1) her NYLL unpaid overtime claim and (2) her NYLL wage statements claim.  Dkt. No. 47; Dkt. No. 48 at 8.  Pursuant to a briefing schedule entered by the parties, Green then filed a motion for partial summary judgment on April 26, 2018, followed by Humana's motion for summary judgment on June 8, 2018, with briefing on all

three motions completed on January 18, 2019.  Dkt. Nos. 53, 65, 98.

### C.  *Kinkead v. Humana, Inc.*

On November 10, 2015, nearly one year in advance of the filing of the *Green* action, Humana home care worker Daverlynn Kinkead filed suit in the District of Connecticut alleging that she was entitled to overtime payments under the FLSA and the Connecticut Minimum Wage Act over a period beginning January 1, 2015.  Ct. Dkt. No. 1 ¶¶ 1, 48–54.  Kinkead sought to bring these claims on behalf of herself, a FLSA collective, and a Rule 23(b)(3) class.  *Id.* ¶ 35–54.

On May 8, 2017, the *Kinkead* court conditionally certified a nationwide FLSA collective. Ct. Dkt. No. 114.  Out of 941 notice recipients, 189 Humana home health aides opted into the collective, including 42 New York home health aides.  Dkt. No. 59-1 at 1–2.  On September 19, 2017, Kinkead moved to amend her complaint to add Claude Mathieu, a New York home health aide, and two claims under the NYLL: (1) as of January 1, 2015, an "effective date" overtime claim parallel to the preexisting FLSA and Connecticut overtime claims; and (2) for the period prior to January 1, 2015, an "unpaid hours" overtime claim alleging that Humana failed to credit home health aides for the minimum number of hours of work mandated by the NYLL when they worked 24-hour or live-in shifts.  *See* Dkt. No. 59-1 at 2; Ct. Dkt. No. 170; Ct. Dkt. No. 181 ¶¶ 16, 39–40, 71–73.  Ms. Mathieu characterizes her effective date overtime claim as a class action on behalf of New York home care workers working between January 1 and October 23, 2015; and her unpaid hours overtime claim as a class action on behalf of New York home care workers who worked 24-hour or live-in shifts at any time between November 11, 2009 and the present.  Dkt. No. 59-1 at 2; Ct. Dkt. No. 181 ¶¶ 16, 71–73.

The district judge presiding over *Kinkead* granted Mathieu's motion for leave to amend

on November 8, 2017. Ct. Dkt. No. 180. On May 4, 2018, the *Kinkead* plaintiffs moved to certify their NYLL and Connecticut law claims as Rule 23 class actions. Ct. Dkt. No. 204. In addition, on August 10, 2018, the *Kinkead* plaintiffs again moved to amend their complaint to add an additional New York putative class representative. Ct. Dkt. No. 256.

### D.     Mathieu *Amicus*

On May 9, 2018, Mathieu filed a motion for leave to file an *amicus curiae* brief in opposition to Green's motion for class certification on the grounds that the *Kinkead* action was first filed. Dkt. No. 59. On February 19, 2019, the Court granted Mathieu leave to appear as *amicus* and ordered both parties to file briefs responding to the issues identified in Mathieu's submission. Dkt. No. 105. Those briefs were submitted on March 7, 2019. Dkt. Nos. 111, 112.

### E.     Certification of the *Kinkead* Class

On March 18, 2019, the *Kinkead* court resolved both of the motions pending before it. Ct. Dkt. No. 293. It certified, as a revision from what the *Kinkead* plaintiffs initially sought, a "New York Effective Date class" consisting of "all home healthcare workers employed by defendants in New York who worked in excess of 40 hours in a week including at least one 24-hour live-in shift between January 1, 2015 and October 12, 2015." *Id.* at 35. And it permitted plaintiffs there to amend their complaint to add another representative of the New York classes. *Id.* at 17–18, 35.

Mathieu advised the Court of this development on March 19, 2019, and on March 22, 2019 Humana filed a letter response submitting that Green's class certification motion should be denied because the proposed class was subsumed by the newly certified *Kinkead* class. Dkt. No. 114–15. On March 25, 2019, Green informed the Court that she intended to file a petition for an interlocutory appeal of the *Kinkead* class certification order and requested that this Court defer

ruling on the *Humana* class certification motion until such time as the Second Circuit ruled on Green's Rule 23(f) petition. Dkt. No. 116.

## II.    Green's Class Certification Motion Is Denied with Leave to Refile

Because the class proposed in the certification motion currently pending before this Court is largely subsumed by the class just certified in *Kinkead*,[1] the Court agrees with the parties that class certification is not appropriate at this time. In light of Green's intention to petition to appeal the *Kinkead* certification order, the Court will administratively deny Green's class certification motion pending the disposition of the anticipated Rule 23(f) petition. Within two weeks of the Second Circuit's resolution of *Kinkead*, Green shall file a status update advising the Court of the Second Circuit's ruling and making any appropriate application to refile its class certification motion in this action.

## III.    Background on Summary Judgment

Having concluded that a ruling on Green's class certification motion is not appropriate at this time, the Court turns to the parties' cross-motions for summary judgment. All class-related facts and allegations are disregarded for purposes of these motions.[2]

### A.    Regulatory Background

As this Court has previously summarized, in 1974, the Fair Labor Standards Amendments extended the protections of the FLSA to employees working in "domestic service" within a household but exempting live-in household employees. MTD Op., Dkt. No. 32 at 1–2. In 1975, the DOL promulgated implementing regulations directing that the exemptions

---

[1] The *Green* action appears to extend slightly later in time and to feature class claims asserted against a slightly different group of Humana-affiliated defendants, and may uniquely assert a wage statements cause of action under the NYLL.

[2] In light of the Court's administrative denial of Green's class certification motion, the Court declines to consider Green's summary judgment motion with respect to her class claims. As appropriate, Green may apply to refile a summary judgment motion with respect to those claims after the disposition of her *Kinkead* petition.

encompassed live-in household employees employed by third parties. *Id.* at 2. The third-party employer rule changed this regulatory landscape, removing third-party employees from the scope of the live-in worker exemption. *Id.* This rule was publicized and issued on October 1, 2013, with a published effective date of January 1, 2015. *Id.* at 2. In December 2014, the district court in *Weil I* held that this rule was invalid. *Id.* at 3 (citing *Weil I*, 76 F. Supp. 3d at 139–40). The D.C. Circuit reversed that decision on August 21, 2015, with the corresponding mandate issuing October 13, 2015. *Id.* (citing *Weil II*, 799 F.3d at 1087).

During the pendency of the *Weil* litigation, the DOL issued several pieces of guidance. On October 9, 2014, the DOL announced that it would not bring enforcement actions for the first six months after the regulation's effective date. *Id.* at 3–4 (citing Oct. 2014 Policy ("The [third-party employer rule] will become effective on January 1, 2015. The Department is not changing this effective date. This document announces a time-limited non-enforcement policy. For six months, . . . the Department will not bring enforcement actions against any employer as to violations of FLSA obligations resulting from the amended regulations.")). On September 14, 2015, after *Weil II*, the DOL published a policy statement notifying the public that it would not bring enforcement actions against employers for violations of the rule "for 30 days after the date the Court of Appeals issues a mandate making its opinion effective," and on October 27, 2015, after the mandate issued, the DOL published a final policy statement identifying November 12, 2015 as the final day of its nonenforcement policy. *Id.* (citing Application of the Fair Labor Standards Act to Domestic Service; Announcement of 30-Day Period of Non-Enforcement, 80 Fed. Reg. 55,029 (Sept. 14, 2015) (codified at 29 C.F.R. Pt. 552) ("Sept. 2015 Policy") and Application of the Fair Labor Standards Act to Domestic Service; Dates of Previously Announced 30-Day Period of Non-Enforcement, 80 Fed. Reg. 65,646 (codified at 29 C.F.R. Pt.

552) (Oct. 27, 2015) ("Oct. 2015 Policy")).

## B.    Factual Background

The facts below come from the parties' respective Rule 56.1 statements and responses thereto.[3]

### 1.    Green's Employment with Humana

Plaintiff Molly Green worked for Humana as a home health aide from April 2015 through November 3, 2016. Response to Green 56.1 ¶ 1. During the course of her employment, Green primarily worked as a "live-in" home health aide. Response to Green 56.1 ¶ 2. The parties dispute whether, as a live-in health aide, she provided care and domestic services to a client on a twenty-four-hour basis, or was permitted to sleep through part of her shift and/or worked intermittently throughout the day. Response to Green 56.1 ¶ 3.

Green also worked as an "hourly worker" for several weeks at the outset of her employment. Response to Green 56.1 ¶ 5. In this role, she worked a 12-hour shift from 8:00 a.m. to 8:00 p.m. at the rate of $10.10 per hour. Response to Green 56.1 ¶ 5.

Green received compensation from Humana during this period for each of her roles. Response to Green 56.1 ¶ 2. In accordance with Humana's classification of all companionship employees as exempt from the FLSA from January 1, 2015 to November 12, 2015, Green was considered an exempt employee throughout the term of her employment. Response to Green 56.1 ¶¶ 8–9. Accordingly, she was not paid overtime wages at the rate of one-and-a-half times her regular pay rate for all hours in excess of forty worked in a given week, and the wage statements she received from Humana did not reflect pay at these rates. Response to Green 56.1

---

[3] Citations to Green's Rule 56.1 statement and Humana's response thereto, Dkt. No. 69, are referred to herein as "Response to Green 56.1." Citations to Humana's Rule 56.1 Statement and Green's response thereto, Dkt. No. 89, is referred to herein as "Response to Humana 56.1."

¶¶ 4, 6–7, 17–18.

## 2. Humana's Actions Pre-*Weil I*

Humana is a member of multiple home care industry trade organizations. Response to Humana 56.1 ¶ 1. These trade organizations provide their members with email updates concerning substantive legal issues in the industry based on the expertise of employment lawyers and others in the home care industry. Response to Humana 56.1 ¶ 2. Humana executives subscribe to email lists from multiple trade organizations in order to monitor and track changes in the laws governing how the company pays its employees. Response to Humana 56.1 ¶ 3.

In part based on these subscriptions, Humana maintains that its "objective has always been to be compliant with the law." Response to Humana 56.1 ¶ 5. Green disputes this fact based on, inter alia, Humana's corporate representative's reliance on third-party commentators and industry-biased news sources; failure to subscribe to DOL updates or read DOL nonenforcement policies; and failure to review emails alerting her to any distinctions between DOL enforcement policies and private enforcement. Response to Humana 56.1 ¶ 5.

At some point in late 2013 or 2014, Humana became aware that the DOL had issued the third-party employer rule to amend regulations defining the companionship exemption to the FLSA. Response to Humana 56.1 ¶ 4. Based on its email and other updates from industry trade organizations, Humana understood that, when the rule took effect, its home health workers would no longer be exempt from the FLSA's overtime and minimum wage requirements. Response to Humana 56.1 ¶ 4. Humana claims that it planned, based on internal discussions, to reclassify all home care workers as non-exempt workers starting on January 1, 2015 based on the new rule, notwithstanding the commencement of the *Weil* litigation. Response to Humana 56.1 ¶¶ 6–7, 14. Green contests this claim based on the absence of corroborating evidence that

Humana was planning to change its pay practice in the fall of 2014. Response to Humana 56.1 ¶¶ 6–7, 14.

In either case, as Humana previously represented to this Court, it did not begin complying with the DOL's third-party employer rule until on or about November 12, 2015. Response to Green 56.1 ¶ 10; Response to Humana 56.1 ¶ 17. The basis for the delay is as follows.

### 3. Humana's Actions After *Weil I*

In December 2014 and January 2015, Humana received updates through trade organization email lists regarding the *Weil* litigation. Response to Humana 56.1 ¶ 8. These updates informed Humana that a federal district court had enjoined the third-party employer rule before it took effect and then invalidated and vacated the entire rule. Response to Humana 56.1 ¶¶ 8–9. Humana understood, based on updates from industry trade organizations and conversations with others in the industry, that the DOL would not be able to enforce the new third-party employer rule unless the district court decision was overturned, and accordingly that the companionship exemption that had been in place since 1975 would continue in effect. Response to Humana 56.1 ¶¶ 8–10. Accordingly, it contends that it reconsidered its decision to reclassify its workers. Response to Humana 56.1 ¶ 14.

The parties disagree whether Humana could reasonably reach this understanding, and specifically whether there was a DOL administrative regulation or other writing on which Humana could have relied for this understanding and its concomitant decision to classify Green and similarly situated employees as exempt after January 1, 2015. Response to Green 56.1 ¶¶ 15–16. Humana maintains that it relied on the 1975 companionship exemption, along with DOL's administrative practice and non-enforcement policies, in deciding to continue to treat its employees as exempt while DOL's appeal was pending. Response to Humana 56.1 ¶ 15;

Response to Green 56.1 ¶¶ 7–9. It further contends that it believed doing so would not violate FLSA or other laws. Response to Humana 56.1 ¶ 15.

Green contests the reasonableness of this conclusion based on the absence of specific guidance sanctioning the decision to disregard the regulation in its entirety notwithstanding its January 1, 2015 effective date and in light of "red flags" that she contends should have put Humana on notice about the limitations of DOL's nonenforcement policies. Response to Humana 56.1 ¶¶ 8–10.

The parties also disagree whether information about the DOL nonenforcement policy from the DOL or other sources of which Humana became aware led the company to believe the regulation could be reinstated retroactively. Response to Humana 56.1 ¶ 13. Humana contends that no such sources led it to this belief, while Green maintains that Humana was or reasonably should have been aware of this possibility based on the DOL's prominent inclusion of an "effective date" as well as emails alerting Humana of the fact that DOL enforcement policy did not bar private actions undermine this claim. Response to Humana 56.1 ¶ 13.

### 4. Humana's Actions After *Weil II*

Based on its industry trade organization subscriptions, Humana learned that in August of 2015 the D.C. Circuit had overturned the lower court's *Weil* decision. Response to Humana 56.1 ¶ 16. It also maintains that it learned that the D.C. Circuit's decision would not become effective until October 13, 2015 and that it became aware that the DOL had issued nonenforcement policies through November 12, 2015. Response to Humana 56.1 ¶ 16.[4] Humana claims that it discussed the new development internally and relied on the DOL's written nonenforcement

---

[4] Green objects to the relevance of both assertions of knowledge on the ground that Humana had already made its decision. Response to Humana 56.1 ¶¶ 16–17. The Court disagrees with Green that neither piece of information is relevant and accordingly considers them for purposes of this opinion.

policies in deciding to continue to treat its employees as exempt until November 12, 2015, in the belief that doing so would not violate FLSA or any other law. Response to Humana 56.1 ¶ 17.

Humana maintains that no policies or other sources led it to believe that the D.C. Circuit's decision could have retroactive effect. Response to Humana 56.1 ¶ 18. Green denies the reasonableness of this understanding. Response to Humana 56.1 ¶ 18

### 5. Humana's Agreements with Green

Humana provided Green with a Caregiver Employment Agreement explaining how Humana intended to calculate her wages. Response to Humana 56.1 ¶ 19. Humana did not provide Green with wage statements that reflected overtime rates of pay. Response to Green ¶ 18. The parties disagree as to whether the wage statements Green was provided were compliant with the Wage Theft Prevention Act in light of the third-party employer rule as well as to whether those wage statements accurately reflected the pay arrangement set forth in Green's Caregiver Employment Agreement. Response to Humana 56.1 ¶ 20–22.

For live-in shifts, Green was paid either $130 or $150. Response to Humana 56.1 ¶ 24. Humana maintains that she was instructed to perform eight hours of work during such shifts, while Green contends she worked more than eight hours. Response to Humana ¶ 24. Humana maintains that Green was paid at hourly rates above the 2015 New York minimum wage of $9 per hour. Response to Humana ¶ 23. Green agrees that she was paid more than $9 per hour as an hourly worker, but contends that her hourly rate as a live-in aide was less than this amount based on her actual hours worked. Response to Humana ¶ 23.

### C.   Procedural Background

The Court's previous opinion resolving Humana's motion to dismiss this action held that *Weil II* nullified the D.C. District Court's vacatur of the third-party employer rule and that the

third-party employer rule therefore should be treated as effective beginning on its prescribed effective date of January 1, 2015. MTD Op. at 7. The Court also held that Humana had not demonstrated it was entitled to the Portal-to-Portal Act's good-faith defense because Humana had not demonstrated as a matter of law that it had a subjective good-faith belief that it was immunized from private suits under the third-party employer rule until November 12, 2015 and that this belief was objectively reasonable. *Id.* at 21.

To the contrary, the DOL's policies continued to emphasize the January 1, 2015 effective date; and the gap between the prescribed effective date and the DOL's enforcement date did not alter the rule's effective date. *Id.* at 21–22. First, in the October 2014 Policy, the DOL stated that it was "not changing [the] effective date" of January 1, 2015 and that it would not bring enforcement actions for six months from that effective date. *Id.* at 21. Second, in the September 2015 Policy, the DOL again noted that the rule "had an effective date of January 1, 2015" and that the Department "ha[d] not begun enforcement" because of its previous nonenforcement policy and because it was a party to the *Weil* litigation. *Id.* at 21–22. And in the October 2015 Policy, the DOL reiterated its previous decision, noting that it had identified November 12, 2015 as the final day of its nonenforcement policy. *See id.* at 4.

Based on the foregoing, the Court could not conclude in the motion to dismiss posture that this "voluntary non-enforcement instilled in Humana a reasonable good-faith belief that it would not be liable" to private enforcement actions. *Id.* at 22. Under the applicable standard, Humana had not shown that the DOL's enforcement statement were "so specific that they left no room for interpretation regarding employers' liability in private enforcement actions brought before November 12, 2015." *Id.* (quotation and internal quotation marks omitted).

### D.    The Summary Judgment Motions

Green seeks partial summary judgment on (a) her FLSA and NYLL overtime claims; (b) her NYLL wage statement claims; and (c) Humana's Portal-to-Portal affirmative defense.  She does not move for summary judgment on her NYLL spread-of-hours claim.  Dkt. Nos. 53–54. Humana opposes this motion and moves for summary judgment in full, to wit: (a) for summary judgment on its Portal-to-Portal affirmative defense; (b) requesting that the Court decline to exercise supplemental jurisdiction over its state law claims; (c) in the alternative, for summary judgement on Green's request for liquidated damages; and (d) for summary judgment on both of Green's NYLL claims.  Dkt. Nos. 65–66.

## IV.    Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law," and is genuinely in dispute if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

Summary judgment should be granted to the moving party if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "[I]n making that determination, the court is to draw all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion."  *Rodriguez v. City of New York*, 72 F.3d 1051, 1061 (2d Cir. 1995).  But the non-moving party "must do more than simply show that there is

some metaphysical doubt as to the material facts" and "may not rely on conclusory allegations or unsubstantiated speculation." *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (quotations omitted).

The party seeking summary judgment bears the initial burden of demonstrating "that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., LP*, 22 F.3d 1219, 1223 (2d Cir. 1994). When the burden of proof at trial would fall on the nonmoving party the moving party may meet its burden by "point[ing] to a lack of evidence . . . on an essential element of the non-moving party's claim." *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009). In order to avoid summary judgment, "the nonmoving party must then come forward with admissible evidence sufficient to raise a genuine issue of material fact for trial." *Id.*; *accord Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (2d Cir. 1986). Accordingly, a plaintiff who uses a summary judgment motion "to challenge the legal sufficiency of an affirmative defense—on which the defendant bears the burden of proof at trial"—may satisfy her burden "by showing that there is an absence of evidence to support an essential element of the non-moving party's case." *FDIC v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quotation and internal brackets omitted).

If both sides move for summary judgment, a court is "required to assess each motion on its own merits and to view the evidence in the light most favorable to the party opposing the motion, drawing all reasonable inferences in favor of that party." *Wachovia Bank, Nat'l Ass'n v. VCG Special Opportunities Master Fund, Ltd.*, 661 F.3d 164, 171 (2d Cir. 2011).

## V.    Discussion

In its opinion on Humana's motion to dismiss, this Court held that the third-party employer rule was effective as of January 1, 2015 and that Humana had not demonstrated it was

entitled to an affirmative defense under the Portal-to-Portal Act for its purported good-faith reliance on DOL administrative regulations, practices, or enforcement policies. Dkt. No. 32 at 19, 22. The parties' motions for summary judgment pick up where that opinion left off.

It is undisputed that Humana did not pay Green overtime wages from January 1, 2015 through November 12, 2015 in compliance with the retroactively applicable third-party employer rule. The central dispute is instead whether Humana has shown, based on admissible evidence, that it is entitled to a Portal-to-Portal Act defense.

### A. Green's Motion for Summary Judgment on Humana's Portal-to-Portal Defense Is Granted

Under the Portal-to-Portal Act, employers have an affirmative defense to retroactive liability for actions taken in good-faith reliance on "any written administrative regulation, order, ruling, approval, or interpretation . . . or any administrative practice or enforcement policy [of the Department of Labor] with respect to the class of employers to which [they] belong." 29 U.S.C. § 259(a).

Humana's Portal-to-Portal Act defense is premised on its reliance on two different regulatory actions over two different periods: (1) over the period from January 1, 2015 through October 12, 2015, good-faith reliance on the DOL's 1975 Regulation concerning the live-in companionship worker exemption; and (2) over the period from October 13, 2015 to November 12, 2015, good-faith reliance on the DOL's express written nonenforcement policies as to the third-party employer rule. Dkt. No. 92, Humana MSJ Reply at 1.

Humana is entitled to a Portal-to-Portal Act defense if it proves (1) that its action was taken in reliance on an administrative decision or practice; (2) that the employer was in conformity with that decision or practice; and (3) that its actions were in good faith. *EEOC v. Home Ins. Co.*, 672 F.2d 252, 263 (2d Cir. 1982). For the reasons that follow, the Court finds

that summary judgment for Green is warranted on Humana's affirmative defense as to both periods.

### 1. As a Matter of Law, Humana's Purported Reliance on the 1975 Regulation Is Not Objectively Reasonable Reliance on a Written Administrative Regulation

As to the period from January 1, 2015 through October 12, 2015, Green maintains that Humana has failed to create a triable issue on its affirmative defense because the Portal-to-Portal Act does not apply to good-faith reliance on the 1975 Regulation. Specifically, Green contends that Humana's claim of reliance on the 1975 Regulation is veiled reliance on the *Weil I* decision, which cannot satisfy the Portal-to-Portal Act's *administrative* action requirement; and reliance on the mere inference—rather than a written administrative policy—that the 1975 Regulation would apply in the wake of that decision. The Court agrees. Humana's purported good-faith reliance depends upon judicial rather than administrative action; and as a matter of statutory interpretation this is not a situation to which the Portal-to-Portal Act applies.

#### a. Humana Relied on a Judicial Ruling

Humana acknowledges that it would not be entitled to rely on a judicial ruling like *Weil I* as the predicate for a Portal-to-Portal Act defense. Humana MSJ Br., Dkt. No. 66 at 13 n.1; *see Tagaeva v. BNV Home Care Agency, Inc.*, No. 16-CV-6869 (RRM), 2018 WL 13206619, at * 4 (E.D.N.Y. Mar. 13, 2018) ("[T]he [Portal-to-Portal Act defense] applies only to reliance on administrative pronouncements, not judicial ones."). Yet that is inescapably what it does.

Humana contends that its reliance was not on *Weil I*, but on the 1975 Regulation. *Weil I* itself does not expressly answer the question of what regulation applied as a consequence of its vacatur of the third-party employer rule. Humana further argues that it made a good-faith judgment that this vacatur did not create a "legal vacuum," but that the 1975 Regulation continued in effect until the D.C. Circuit's mandate issued. *Id.* at 3. As a consequence, Humana

17

continued to follow the 1975 Regulation's provisions. *Id.*

Humana's argument that it did not *exclusively* rely upon *Weil I* cannot obscure the fact that it necessarily did so. It is undisputed that Humana was aware of the existence of both the 1975 Regulation and the third-party employer rule. Humana's argument that it could rely on the former rather than the latter is premised on *Weil I*'s disposition vacating the third-party employer rule. Humana therefore *is* relying on *Weil I*—reliance Humana concedes is beyond the scope of the Portal-to-Portal Act.

That Humana's reliance is ultimately tied to judicial rather than administrative action is further apparent in the fact that under Humana's logic the Portal-to-Portal Act defense ceases to be available not at the moment the Humana received agency guidance, nor at the moment the reinstated regulation became effective, but at the time that the Court of Appeals elected to issue its mandate.

Accordingly, the Court concludes that Humana's defense is necessarily based on matters outside the scope of a Portal-to-Portal Act defense.

> **b.      The Text of Section 259 Does Not Support Humana's Interpretation**

Even if the Court accepted Humana's premise that it was relying on the 1975 Regulation, in this situation, that regulation is not "exactly the type of 'regulation' upon which Congress intended employers to base a defense under § 259." Humana MSJ Reply at 3. To the contrary, Humana's putative defense relies on an expanded interpretation of the Portal-to-Portal Act that is inconsistent with statutory text and binding precedent in this circuit.

The text of Section 259 provides that an employer may raise as a defense to liability a DOL "written administrative regulation, order, ruling, approval, or interpretation . . . or any administrative practice or enforcement policy" with respect to the class of employers to which it

belongs. 29 U.S.C. § 259(a). This defense shall apply notwithstanding that after the employer's reliance thereon "such administrative regulation, order, ruling, approval, interpretation, practice, or enforcement policy is modified or rescinded or is determined by judicial authority to be invalid or of no legal effect." *Id.*

Humana's argument hinges on interpretation of the term "written administrative regulation." As to administrative interpretations, the Second Circuit has observed that an action cannot be taken in reliance on an interpretation that fails to "g[i]ve any sort of interpretive guidance" or that leaves an employer "to its own devices to interpret the act," as the Portal-to-Portal Act "was not intended to make each employer his own judge of whether or not he has been guilty of a violation." *Home Ins.*, 672 F.2d at 265 (quotation omitted). As the Second Circuit described this question in the context of the objective good faith requirement, the Act applies to those situations in which "the agency advice was specific and left no room for interpretation." *Id.* at 266. If "the administrative interpretation is uninformative and leaves the employer to make its own reading of the precise requirements of the statute," the employer's "honest, but unsuccessful intention to obtain information does not relieve it of liability." *Id.*

Although Humana points to a regulation rather than an interpretation, the same logic applies: there must be a regulation that specifically governs the matter for the employer to be entitled to a Portal-to-Portal Act defense. Humana argues that the text of the 1975 Regulation fulfills that role here because it facially provides for the third-party employer exemption. But Humana identifies no administrative writing that answers the threshold question of whether the 1975 Regulation was in effect while the third-party employer rule was vacated. As Humana's corporate representative's testimony makes clear, *see* Driscoll Dep., Dkt. No. 88-2 at 57:8–59:18, it was Humana's own inference—not an administrative writing—that answered the

question of which regulation might apply. And that inference was inescapably predicated on a prior judicial determination.

### c. Statutory Context Confirms this Reading

The Second Circuit's summary of the Portal-to-Portal Act's purpose confirms that the present situation—in which the agency has been silent on the interpretive or regulatory question, and only a court has spoken—is not what Congress intended the defense to cover. As the Second Circuit explained in *Home Insurance*, the Act "was designed to protect employers from liability if they took certain actions on the basis of an interpretation of the law by a government agency, even if the agency's interpretation later turned out to be wrong." *Home Ins.*, 672 F.2d at 263. The first section of the statute similarly includes Congress's findings that when it passed the Portal-to-Portal Act it was concerned that the FLSA had been "interpreted judicially in disregard of long-established customs, practices, and contracts between employers and employees," thereby creating ruinous liabilities for employers, windfall payments for employees, and other undesirable effects. 29 U.S.C. § 251.

Humana's purported reliance on the 1975 Regulation runs in reverse. Humana was not attempting to comply with a regulation that later turned out to be wrong or that was subsequently invalidated by judicial action. Rather, it was relying on a regulation that it determined continued to apply based upon an intervening judicial action. Finding for Humana would not protect employers' good-faith reliance on agency interpretations or regulations notwithstanding subsequent judicial intervention; it would permit reliance on a district court's judicial intervention to controvert an agency action.

Humana is correct in pointing out that part of the purpose of the defense is to avoid penalizing employers for their good-faith reliance or creating windfalls for employees that

20

disturb the expectations of the contracting parties. But as with the principles of retroactivity, the purpose of the Portal-to-Portal Act is not to protect employer bottom lines, it is to protect good-faith reliance on certain kinds of *agency actions*. If Congress had intended for reliance on judicial actions or inferences therefrom to qualify for protection under the statute, it could have written the Portal-to-Portal Act to cover such circumstances.

### d.     Remaining Arguments Favor Summary Judgment

Humana's remaining argument is that the Court's conclusion creates an "irreconcilable tension" between the Portal-to-Portal Act and the Administrative Procedure Act because failing to apply the Portal-to-Portal Act to cases like this one would preclude district courts from exercising the power to "set aside" or delay new regulations. Humana MSJ Reply at 5. That is, if after a Court set aside a regulation under the APA the employer could not rely in good faith on the preexisting regulation, the court would not be empowered to set aside the regulation at all. This would mean that the APA provided only a "half-measure of relief" to an employer. *Id.*

As an initial matter, this argument underscores the extent to which Humana relied on a judicial opinion to reach its decision to rely on the 1975 Regulation. In any case, this argument is unavailing because the statutory regimes of the Portal-to-Portal Act and the APA are separate. The Portal-to-Portal Act applies only to a narrow set of statutes and provides limited relief from retroactive liability in specific contexts—here, in the context of employer compliance with later-invalidated, superseded, or modified DOL regulations. It is irrelevant to the vast majority of administrative action. Accordingly, an expansive interpretation of the Portal-to-Portal Act cannot be necessary to realize the purposes of the APA.

### 2.     No Genuine Issue of Fact Regarding Humana's Objective Good Faith Reliance on DOL Nonenforcement Policies Remain

Green is also entitled to summary judgment as to Humana's second asserted Portal-to-

Portal defense because Humana has failed to identify a genuine dispute of fact as to the objective reasonableness of its reliance on DOL nonenforcement policies for its continued decision not to comply with the third-party employer rule.

For reliance on a written administrative policy to be in good faith, the defendant must demonstrate that it was an *objectively* reasonable object of reliance; "the employer's honest, but unsuccessful, intention to obtain information does not relieve it of liability." *Home Ins.*, 672 F.2d at 266; *see also Scott v. Chipotle Mexican Grill, Inc.*, 67 F. Supp. 3d 607, 612–13 (S.D.N.Y. 2014).

This Court has previously observed that, while the DOL's policy statements "would likely be sufficient to protect Humana against liability in an enforcement action by the DOL, they were not so specific that they 'left no room for interpretation' regarding employers' liability in private enforcement actions brought before November 12, 2015." MTD Op. at 22 (quoting *Home Ins.*, 672 F.2d at 266). Humana has not identified any facts in the summary judgment record that disturb this analysis. There is no genuine dispute of material fact as whether the DOL's nonenforcement policies were silent on the matter of private enforcement or as to whether the policies consistently repeated references to the January 1, 2015 effective date. Given each of these undisputed facts, as detailed below, the enforcement policies at issue here are insufficiently specific to support objectively reasonable reliance for given each of these undisputed facts. Accordingly, no reasonable jury could conclude that it was objectively reasonable for Humana to rely on these enforcement policies in declining to enforce the third-party employer rule as of its effective date.

### a.    The Enforcement Policy Is Silent as to Private Enforcement

First, the policy statements discuss only the *Department*'s "time-limited non-enforcement

policy" and the fact that "the *Department* will not bring enforcement actions against any employer for violations of FLSA obligations" resulting from the new regulations for 30 days after the mandate issues. Sept. 2015 Policy (emphasis added); *see also* Oct. 2014 Policy, Dkt. No. 56-1; Oct. 2015 Policy, Dkt. No. 56-3.

To dispute this distinction, Humana contends that the Second Circuit has embraced its logic that employers may rely on administrative nonenforcement policies as a defense to private enforcement. It notes that the Second Circuit in *Darr v. Mutual Life Insurance Co. of New York* affirmed a lower court opinion validating a Portal-to-Portal Act defense against private plaintiffs notwithstanding the fact that the defendant had acted in good-faith reliance on an administrative enforcement practice. 169 F.2d 262, 265–66 (2d Cir. 1948). But *Darr* confronted the more basic question of the Portal-to-Portal Act's constitutionality, and neither the circuit nor the lower court discussed the issue presented here. *See id.*; *Darr v. Mutual Life Ins. Co.*, 78 F. Supp. 28 (S.D.N.Y. 1947).

The Court will instead follow the logic it and contemporary courts have previously adopted: that DOL policy statements concerning Department enforcement policies are insufficiently specific, under the requirements of *Home Insurance*, to confer the protection of the Portal-to-Portal Act on a reasonable employer who purported to rely on them. *See* MTD Op. at 22; *Collins v. DKL Ventures, LLC*, 215 F. Supp. 3d 1059, 1061 n.2 (D. Colo. 2016) ("[T]he Court disagrees with the [d]efendant's premise that it is essential that the private right of action conferred by statute be necessarily circumscribed by those situations in which the DOL voluntarily decides to exercise 'prosecutorial discretion' due to its own uncertainties about the regulation's effect.").

Humana also argues that its ability to follow agency guidance would be impeded by a

principle that it could not assert a good-faith reliance defense against private plaintiffs notwithstanding an agency enforcement policy. There is no such risk. Humana may assert the Portal-to-Portal Act defense to defend itself against an agency action taken notwithstanding a nonenforcement policy on which it relied in good faith; and it may rely in good faith on agency advice whenever that advice specifically applies.

### b. The "Effective Date" Listed in the Enforcement Policy

Even if it were objectively reasonable to conclude that an act was not privately enforceable during an administrative nonenforcement period that coincided with *Weil I*'s vacatur of the third-party employer rule, it was no longer objectively reasonable to do so after the disposition of *Weil II.* As Green points out, the nonenforcement policies repeatedly flagged the existence of an earlier effective date of January 1, 2015. Even if it were objectively reasonable for an employer to be unaware of the basic principles of retroactivity, after the D.C. Circuit reversed the *Weil I* opinion, the January 1, 2015 "effective date" in the nonenforcement policies would have had no apparent meaning if it could be disturbed by agency nonenforcement policies.

\* \* \*

Accordingly, Green's motion for summary judgment as to Humana's affirmative defense is GRANTED. Because there was no genuine dispute of material fact as to Humana's Fair Labor Standards Act and New York Labor Law violations in the absence of this defense, summary judgment as to Green's overtime claims is also GRANTED.

### B. Green's Motion for Summary Judgment as to Her NYLL Wage Statements Claim Is Denied

It is undisputed that Humana provided Green with wage statements including wages and hours based on the hourly representation of the day rate Humana paid Green for working live-in shifts. The only question is one of law: whether the New York Wage Theft Prevention Act

24

("WTPA") imposes so-called derivative liability for misclassification violations or whether Humana may comply with the WTPA by disclosing how Green's wages were being calculated at the time. Because a genuine dispute of material fact exists as to whether Humana reasonably believed in good faith that it was not required to provide Green with these statements, Green's motion for summary judgment is denied as to this claim.

Humana argues that derivative liability for WTPA violations is not appropriate: the purpose of the statute was to enhance transparency, not to create an additional penalty for misclassification violations by making any such violation a *per se* violation of the WTPA. Indeed, Humana argues, the fact that when the WTPA added a penalty for misclassification it separately increased the penalties available for failure to pay overtime reinforces Humana's interpretation that the WTPA is not intended to be a penalty provision for the former violation. Humana also argues that it is entitled to the New York Labor Law's good faith defense for employers who reasonably believed in good faith that they were not required to provide employees with wage statements, because it believed that Green's wage statements were consistent with "how Plaintiff's wages were being calculated *at that time*." Humana MSJ Br. at 23; *see also* NYLL § 198(1-d).

Green contends that the plain text of the WTPA forecloses the first argument: the WTPA requires "each employer" to "furnish each employee with a statement of every payment of wages" and, for employees "not exempt from overtime compensation as established in the commissioner's minimum wage orders or otherwise provided by New York state law or regulation," to include the "regularly hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked." NYLL § 195(3). The law makes no distinction as to the contingencies presented here and no exceptions

for so-called derivative liability. Accordingly, courts in this district find employers liable for failing to "comply with the strict requirements of the wage statement law"—even, for example, for newly exempt home care workers notwithstanding that such workers were paid by shift. *Rodriguez v. Avondale Care Grp., LLC*, No. 16-CV-3084 (SN), 2018 WL 1582433, at *8 (S.D.N.Y. Mar. 27, 2018).

Green does not respond to Humana's contention that it is entitled to a defense for good faith compliance with the WTPA.

The Court need not resolve the parties' disagreements regarding so-called derivative liability because a reasonable jury could conclude Humana harbored a good-faith belief that it was not obligated to make the WTPA disclosures applicable to nonexempt employees. *See Cabrera v. Schafer*, 222 F. Supp. 3d 250, 254–55 (S.D.N.Y. 2106). Humana's obligation to provide home health aides with wage statements that comply with all elements of the WTPA for exempt employees from January 1, 2015 rests upon a chain of legal contingencies, including whether the WTPA imposes derivative liability as a general matter and whether WTPA obligations accrue based upon retroactive FLSA or NYLL liabilities. Although little evidence on this point is presently before the Court, a good-faith misapprehension about these contingencies may be objectively reasonable and a reasonable jury might conclude that Humana harbored that misapprehension. Accordingly, at least in the absence of any argument by Green, the Court cannot conclude that its rejection of Humana's Portal-to-Portal defense necessarily precludes a good faith defense to its WTPA obligations as well. Summary judgment is therefore unwarranted as to this claim.

### C. Humana's Motion for Summary Judgment as to its Portal-to-Portal Affirmative Defense and as to Green's Request for Liquidated Damages Is Denied

The Court turns next to Humana's motion for summary judgment. For the reasons given

above, Humana—which would bear the burden of proof on this affirmative defense at trial—fails to identify sufficient undisputed facts from which the Court could conclude that no reasonable jury could find other than for Humana on its Portal-to-Portal defense. Accordingly, Humana's motion for summary judgment on this defense is denied.

Humana's motion for summary judgment as to Green's request for liquidated damages is also denied. The undisputed facts in the summary judgment record are insufficient for Humana to meet its "difficult" burden of identifying "plain and substantial evidence of at least an honest intention to ascertain what the FLSA requires and to comply with it." *Brock v. Wilamowski*, 833 F.2d 11, 19 (2d Cir. 1987); *see also Inclan v. N.Y. Hospitality Grp., Inc.*, 95 F. Supp. 3d 490, 504–05 (S.D.N.Y. Mar. 26, 2015) (applying the same standard to the NYLL). The Court retains discretion to deny liquidated damages at a later date on an appropriate showing of Humana's subjective good faith and an objectively reasonable basis for believing it complied with the FLSA or NYLL.

### D.  Humana's Motion for Summary Judgment as to Green's Wage Statements Claim Is Denied

Humana raises two arguments in support of its entitlement to summary judgment on Green's WTPA claim: that no derivative liability for WTPA claims exists in this situation; and that it is entitled to an affirmative defense under the WTPA because any violation of the WTPA was made in good faith. Humana abandons the first argument in its reply.

As to the second, as explained above, it is undisputed that Humana failed to provide Green with wage statements that reflected overtime rates of pay. But disputed facts concerning its comprehension of the relevant laws and whether it had a reasonable basis for such shortfalls remain. Those disputed facts would entitle a reasonable jury to reject Humana's defense and render summary judgment on this claim unwarranted.

27

### E. Humana's Motion for Summary Judgment on Green's Spread-of-Hours Claim Is Denied

Humana finally maintains that it is entitled to summary judgment on Green's spread-of-hours claim because Green was paid at rates above the 2015 New York minimum wage at all times relevant to this action: when she worked as an hourly employee, she worked 12 hours per day at $1 above minimum wage; and when she worked as a live-in aide, she did not work enough hours to support her claim that her effective rate of pay fell below $9 per hour. Summary judgment is not warranted on this claim.

Regardless of whether employees who make more than minimum wage may prevail on a spread-of-hours claim, *see Doo Nam Yang v. ACBL Corp.*, 427 F. Supp. 2d 327, 339–40 (S.D.N.Y. 2005), there are disputes of material fact precluding summary judgment on Green's spread-of-hours claims in light of the parties' disagreement regarding the precise number of shifts Green worked as a live-in aide. *Compare* Green Decl., Dkt. No. 56-4 ¶ 5 (maintaining that Green was "constantly on call" and "never slept through the night") *with* Caregiver Employment Agreement, Dkt. No. 68-2 (listing Green as being paid for "8 hours of intermittent work per day").

## VI. Conclusion

For the foregoing reasons, Green's motion for partial summary judgment is GRANTED with respect to Green's FLSA and NYLL overtime claims and Humana's affirmative Portal-to-Portal defense. Her motion is DENIED with respect to her NYLL wage statements claim. Humana's motion for summary judgment is DENIED. Further, Green's motion for class certification is administratively DENIED. Within two weeks of the Second Circuit's disposition of Green's anticipated Rule 23(f) interlocutory appeal in *Kinkead*, Green shall file a status update advising the Court of the Second Circuit's ruling and making any appropriate application to

refile its class certification motion in this action.

A case management conference will be scheduled by separate order.

This resolves Dkt. Nos. 47, 53, 65, 115, and 116.

SO ORERED.

Dated: March 30, 2019
New York, New York

_____
ALISON J. NATHAN
United States District Judge