# Exhibit A

Phone: (214) 299 8887
4009 Lindbergh Drive
Addison, TX 75001
WWW.REPORTINGUSA.COM

REPORTING USA
• COURT REPORTERS •

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK:
INDEX NO. 16-CV-07586(AJN)

- - - - - - - - - - - - - - - - - - - - - - - -x

 MOLLY GREEN, on behalf of herself and all others
similarly situated,

                         Plaintiff,

                         -against-

 HUMANA AT HOME, INC. d/b/a SENIORBRIDGE FAMILY
COMPANIES, INC.

                         Defendant.

- - - - - - - - - - - - - - - - - - - - - - - -X

      PLACE:   Joseph & Norinsberg, LLC
               225 Broadway, Suite 2700
               New York, New York 10007

      DATE:    NOVEMBER 26, 2018

      TIME:    10:30 AM


      EXAMINATION BEFORE TRIAL of KATHY DRISCOLL, held
at the above time and place pursuant to order, taken
before TAYLOR KEHOE, a reporter and Notary Public
within and for the State of New York.
```

```
 1
 2                A P P E A R A N C E S

 3  Joseph & Norinsberg, LLC
     Attorney for the Plaintiff
 4      225 Broadway, Suite 2700
        New York, NY 10007
 5
    BY: CHAYA GOURARIE, ESQ.
 6      T:  212-227-5700
        E:  Chaya@NorinsbergLaw.com
 7

 8  Jackson Lewis P.C.
     Attorney for the Defendant
 9      58 South Service Road, Suite 250
        Melville, NY 11747
10
    BY: NOEL P. TRIPP, ESQ.
11      T:  631-247-0404
        E:  Noel.Tripp@JacksonLewis.com
12

13
14  TAYLOR KEHOE
    Reporter
15
16
17
18
19
20
21
22
23
24
25
```

1    Q.    How would that address the raising costs
2 associated with the home care regulation?
3    A.    In a private pay competitive market, it may
4 make the charge for a live-in unrealistic for the
5 consumer that might buy it.
6    Q.    Did there come a time that Humana decided not
7 to reclassify the workers as non-exempt after all?
8         MR. TRIPP: Objection.
9    A.    In late December, early January -- late
10 December of 2014, early January of 2015, after we
11 received notification that there was a decision
12 vacating the home care regulation, we decided to -- we
13 decided to not go forward with it at that time for
14 January 1st, 2015.
15   Q.    The ruling vacating -- the DOL rule came down
16 January 14th, 2015.  Is it your testimony that Humana
17 made this decision not to reclassify the workers as
18 non-exempt on some date after January 14, 2015?
19        MR. TRIPP: Objection.
20   A.    There were communications that were earlier
21 than the final decision than on January 14th, that
22 indicated that that might be the case.  So over that
23 few week period, specifically one right around, I
24 believe, a few days before the holidays then.
25   Q.    And when you say, 'a few days before the

```
 1  care regulation versus private enforcement?
 2          MR. TRIPP: Objection.
 3      A.  I don't believe that we did.
 4      Q.  As you sit here today, do you think that's an
 5  important distinction?
 6          MR. TRIPP: Objection.
 7      A.  I would just go back to my previous
 8  statement, that I think that anybody can bring suit at
 9  any time. I...
10      Q.  Directing your attention to January 1, 2015,
11  on that day, January 1, 2015, did Humana reclassify
12  home health care workers as non-exempt in compliance
13  with the home care regulation of January 1, 2015?
14          MR. TRIPP: Objection.
15      A.  No, we did not.
16      Q.  Why didn't Humana reclassify its home health
17  care workers as non-exempt in compliance with the home
18  care regulation of January 1, 2015?
19          MR. TRIPP: Objection.
20      A.  We had everything ready to do so. The
21  reported facts that we had that we previously discussed
22  from late December, with an imminent ruling that would
23  give us indication and guidance of what would the go
24  forward look like, was expected within a week or two
25  according to most of the information that we have had
```

Reporting USA

1      Q.    I'd like to show you what's been marked as
2  Plaintiff's Exhibit L.  It's a caregiver employment
3  agreement directed to Molly Green, dated April 21,
4  2015.  Bates stamp number is Defendant's 000159.  Do
5  you recognize this document?
6      A.    Yes.
7      Q.    What do you recognize it to be?
8      A.    The caregiver employment agreement.
9      Q.    Were you involved in developing this
10 agreement?
11           MR. TRIPP:  Objection.
12     A.    I don't recall if this particular version.
13 I'm sure it was the same group that was responsible for
14 developing much of the job description, etcetera.
15     Q.    And were you a part of that group?
16     A.    Yes.
17     Q.    It states at the top, "SeniorBridge Family
18 Companies (NY) Inc." To your knowledge, is this
19 caregiver agreement used by all SeniorBridge branches
20 of New York?
21           MR. TRIPP:  Objection.
22     A.    Yes.
23     Q.    To your knowledge, is this caregiver
24 employment agreement still being used today?
25           MR. TRIPP:  Objection.

 1       Q.    To your knowledge, is this template of the
 2   SeniorBridge employment agreement still being used
 3   today?
 4       A.    I'm not -- I don't know if it's the template
 5   they're using today.
 6       Q.    How many SeniorBridge branches are there in
 7   New York?
 8             MR. TRIPP:  Objection.
 9       A.    I believe there are four.
10       Q.    On or about 2015, were there four branches at
11   that time to your knowledge?
12       A.    I believe there were four then.
13       Q.    Directing your attention to the pay rates.
14   Hourly pay rate:  $10 per hour.  Live-in pay rate:  130
15   for five days per day and 150 for seven days per day."
16   Do you see that?
17       A.    I do.
18       Q.    Are these pay rates consistent with the home
19   care regulation of January 1, 2015?
20             MR. TRIPP:  Objection.
21       A.    This was following the guidelines for day
22   rates and exemption for live-in workers while this was
23   pending, while the appeal was pending or the appeal was
24   being made.
25       Q.    To your knowledge, how would the rates be

1  different if this agreement had been in compliance with
2  the home care regulation --
3          MR. TRIPP:  Objection.
4     Q.   -- of January 1, 2015?
5          MR. TRIPP:  Even I don't know what that
6          question means.
7     Q.   To your knowledge, is the pay rate of $130
8  per day for five days a pay rate that is consistent
9  with the home care regulation of January 1, 2015?
10         MR. TRIPP:  Objection.  Asked and answered.
11    Q.   You can answer.
12    A.   I think you need to say it again then.
13    Q.   The pay rate represented here on the second
14 line, so it's $130 per day for five days for a live-in,
15 is that a pay rate that is consistent with the home
16 care regulation of January 1, 2015?
17         MR. TRIPP:  Objection.  Asked and answered,
18         and it calls for a legal conclusion.
19    Q.   You can answer.
20    A.   It's a pay rate that is consistent with the
21 live-in exemption that we were following, at that time,
22 while the home care regulation had been invalidated and
23 appeal was pending.
24    Q.   And the pay rate of $150 per day for seven
25 days for a live-in, is that a pay rate that's

1  consistent with the home care regulation of January 1,

2  2015?

3         MR. TRIPP:  Same objections.

4     A.   The pay rate that's consistent with the

5  companion exemption for a live-in. After that, the home

6  care regulation was invalidated and an appeal was

7  pending.

8     Q.   You stated earlier that you had been deposed

9  before, correct?

10    A.   Yes.

11    Q.   What was that in connection with?

12    A.   It was in connection with a termination of an

13 employee.

14    Q.   Was that the only time you were deposed?

15    A.   Yes.

16    Q.   Have you ever been a plaintiff or defendant

17 in any other lawsuits?

18    A.   No.

19    Q.   Have you ever been convicted of a crime?

20    A.   No.

21    Q.   Were you at all involved in gathering

22 documents for production in this litigation?

23         MR. TRIPP:  Objection.

24    A.   No.

25         MS. GOURARIE:  Let's go off the record.